### IN THE 21ST JUDICIAL CIRCUIT COURT OF ST LOUIS COUNTY, MO

| | |
|---|---|
| ASHFAQ HUSSAIN SYED, SHELLY RENEE BRANCH, A.M.S., by Next Friend Ashfaq Hussain Syed, and N.G.S., By Next Friend Ashfaq Hussain Syed,  )<br><br>Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>FRONTIER AIRLINES, INC.,  )<br>  )<br>Defendant.  ) | Case No.:  19SL-CC02229-01<br><br>Judge Joseph L. Walsh, III |

### NOTICE OF HEARING

**PLEASE TAKE NOTICE THAT** Defendant Frontier Airlines, Inc.'s Motions to Dismiss and to Strike shall be taken up and heard by the Circuit Court of St. Louis County, Missouri on, Thursday, October 31, 2019 at 9:00AM before Judge Walsh or as soon thereafter as counsel can be heard.

**DATED** September 26, 2019.

/s/  David C. Berwin
David C. Berwin, Bar No. 55046
**EVANS & DIXON, LLC**
Attorney for Defendant
211 North Broadway, 25th Floor
St Louis MO  63102
(314)  552-4046  Tel. No.
(314)  884-4446  Fax No.
dberwin@evans-dixon.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September 2019, the foregoing instrument was electronically filed with the Clerk of the Court and served upon all counsel of record via the Court's CM/ECF system.

/s/  David C. Berwin

DMS-#4190627-v1-NOH_MTD_and_TO_STRIKE

Electronically Filed - St Louis County - October 03, 2019 - 11:47 AM

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM

IN THE CIRCUIT COURT FOR THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| ASHFAQ HUSSAIN SYED, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.:   19SL-CC02229 |
| v. ) | |
| ) | Division:   4 |
| FRONTIER AIR LINES, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND
MOTION TO STRIKE**

Come now Plaintiffs, by counsel W. Bevis Schock, Thatcher A. Stone and William T. Woodrow III, (the latter two *pro hac vice*) and state as Plaintiffs' Memorandum in Opposition to Defendants Partial Motion to Dismiss and to Strike:

**ABBREVIATED FACTUAL SUMMARY**

Plaintiffs booked airline tickets on Defendant's airline for a family trip to Las Vegas. When they arrived at the airport they were treated rudely by one of Defendant's employees. They finally boarded their flight, only to be removed, without cause, from the plane, by the same rude employee, a few minutes later. In the course of returning to the terminal they were locked in the sweltering hot jetway by this same employee until they called customer service and were released some minutes later. Upon leaving the airport, they were threatened that they would receive the same treatment if they dared to return for travel on the following day.

**CLAIMS**

Plaintiffs make the following claims:

Count I:   Negligent failure to transport Plaintiffs. Upon reflection, Plaintiffs withdraw Count I, as Plaintiffs' other claims sufficiently and more

1

|  |  |
|---|---|
|  | accurately apply the law to the facts and address Plaintiffs' damages. |
| Count II: | Negligence Per Se.  Defendant's conduct violated the TICKETS Act, which requires transport by airlines for those with tickets, by failing to provide Plaintiffs transportation to Las Vegas (providing the basis for a common law action although the TICKETS Act became law after these events). |
| Count III: | Negligence - Manner of Removal of Plaintiffs from Plane.  Defendant was negligent in its manner of removing Plaintiffs from the plane, locking them in the jetway, threatening them afterwards, and defaming them to third parties. |
| Count IV: | Intentional Tort.  In the alternative Defendant's conduct was lawful, but outrageous due to Defendant's evil motive or reckless indifference to the safety and rights of Plaintiffs. |
| Count V: | False Imprisonment in Jetway.  Defendants falsely imprisoned Plaintiffs in the jetway. |
| Count VI: | Breach of Contract.  Defendant breached its contract to transport Plaintiffs to Las Vegas. |

**FORM OF DEFENDANT'S MOTION AND NATURE OF REPONSE**

Defendant moves to dismiss Counts I-V for Failure to State a Claim on Which Relief may be Granted, and to Strike Plaintiff's Claims for Punitive Damages.  Defendant asserts, claim by claim, that for one reason or another the causes of action are not viable.  Plaintiff will respond

2

claim by claim to the specific issues raised by Defendant, and, when appropriate, quote from Plaintiffs' Petition.

## LEGAL STANDARD

### Motion to Dismiss

"A motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition." *Murphy v. Stonewall Kitchen*, LLC, 503 S.W.3d 308, 310 (Mo.App. E.D., 2016). In considering the petition on a motion to dismiss, "the court must construe it liberally and favorably to plaintiff, giving him the benefit of all inferences fairly deducible from the facts stated. *Holland By and Through Gardner v. W.A.S.P. Inc.,* 833 S.W.2d 23, 24 (Mo.App. E.D. 1992). The court assumes that "the factual allegations contained in the petition are true and make(s) no attempt to weigh their credibility or persuasiveness." *Fenlon v. Union Elec. Co.,* 266 S.W.3d 852, 854 (Mo.App. E.D. 2008). "If the facts pleaded and reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's standpoint, show any ground upon which relief can be granted, the plaintiff has a right to proceed." *Murphy*, 503 S.W.3d at 310.

The petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993).

### Motion to Strike Punitive Damages

In *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. 1973) the court prohibited the trial court from striking a claim for punitive damages:

> All this opinion holds is that relator has properly pleaded a cause of action and prayer for damages which survives. He must still prove his allegations. In the vast majority of cases nothing close to the standard necessary to recover punitive damages will be met. If it has not been met, the trial court has the power, and the duty, to strike that portion of the petition, but only after plaintiff has had the opportunity to meet his burden of proof and has failed, if so.

3

## COUNT I – NEGLIGENT FAILURE TO TRANSPORT

Plaintiffs abandon this claim, conceding that defendant's negligence was not its failure to transport per se, as that does too closely resemble the judicially rejected concept of "negligent breach." Defendant's negligence is more appropriately captured in Count III of Plaintiff's Petition.

## COUNT II – TICKETS ACT - NEGLIGENCE PER SE

Defendant makes two arguments against Plaintiff's negligence per se claim, first, that the TICKETS Act ("the Act"), was enacted after the incident, and second, that the Act does not create a private right of action.

The statute at issue in this action is the 'Transparency Improvements and Compensation to Keep Every Ticketholder Safe Act of 2018' or the 'TICKETS Act,' which states in relevant part:

> Beginning on the date of enactment of this Act, a covered air carrier may not deny a revenue passenger traveling on a confirmed reservation permission to board, or involuntarily remove that passenger from the aircraft, once a revenue passenger has—
>
> (1) checked in for the flight prior to the check-in deadline; and
>
> (2) had their ticket or boarding pass collected or electronically scanned and accepted by the gate agent.

3562P, SEC. 425. TICKETS ACT., Av. L. Rep. P 3562P

Plaintiff will take the second issue first. Plaintiff is not claiming that the Act creates a private right of action. Plaintiff is claiming that under Missouri law violation of a statute is negligence per se because the statute sets the standard of care. See *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 498 (Mo. Ct. App. 2018):

> The violation of a statute, which is shown to be the proximate cause of the injury, is negligence per se. *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. App. E.D. 2012). Negligence per se arises when the legislature pronounces in a

4

statute what the conduct of a reasonable person should be and the court adopts that statutory standard of care to define the standard of conduct of a reasonable person. *Id.* When a case based on negligence per se is submitted to the jury, the standard of care is omitted because the statutory violation itself constitutes a breach of the standard of care. *Id.* To establish a claim of negligence per se, the plaintiff must plead and prove the following four elements: (1) the defendant violated a statute; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) the injury complained of was of the kind the statute was designed to prevent; and (4) the violation of the statute was the proximate cause of the injury. *Id.* at 84-85.

Negligence per se *only depends upon a statute to define the standard of conduct of a reasonable person.* The claim sounds in common law – it uses the statute only to satisfy the duty and breach prongs in a common law negligence analysis. It remains to the Plaintiff to establish causation and damages. See also, *Elder v. Allstate Ins. Co.*, 341 F.Supp.2d 1095, 1100 (D.Minn. 2004) (citing *Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn. 1993) (The negligence per se doctrine does not create new causes of action. Rather, where an underlying common law cause of action exists, a statutory enactment could establish a standard of care in a negligence action.) (Internal quotations omitted).

In support of its second issue, timing, Defendant states that the Act does not apply retrospectively. While Plaintiffs admit that to be so, Plaintiffs state once more that they are not proceeding under the statute – they are using the statute as a measure of the standard of care. A standard of care is what the legislature says it is. The lack of retroactivity does not change the fact that the Congress has set the standard of care, and Plaintiffs proceed under that standard of care.

Defendant also asserts that to use the Act to establish a standard of care would be to apply the law ex post facto, which Plaintiffs agree the law cannot do. Nevertheless, "A law is retrospective in operation if it impairs vested rights or imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank, USA, N.A.,* 220

S.W.3d 758, 769 (Mo. banc 2007). "Procedural statutes that do not affect the rights or duties giving rise to the cause of action but instead provide the method for enforcing rights may be applied retrospectively without violating the ban on retrospective laws." *Id.*

Plaintiffs' claim survives this aspect of Defendant's attack for two reasons: First, the Tickets Act does not affect the substantive rights of the passenger or the duty of the airline – the passenger already has the contractual right to carriage if he is checked in on time and has had his boarding pass scanned; the airline has the contractual duty to provide carriage. The Tickets Act makes no greater demand on the airline than that which the contract requires, and it grants the passenger no private right of action against the airline. Instead the TICKETS Act merely provides the government method for enforcing the pre-existing rights and duties on behalf of the passengers. As such, it is procedural and does not violate the ban on retrospective laws.

## COUNT III – NEGLIGENCE - MANNER OF REMOVAL OF PLAINTIFFS FROM PLANE

### Contract Claim Does Not Foreclose Negligence Claim

Defendant is wrong in maintaining that the entirety of the duty owed to the Plaintiffs is governed by contract. Defendant's duty to the Plaintiffs may have initially arisen through contract, but by assuming its contractual duties, Defendant also shouldered common law duties that governed its behavior while executing the contract, including the heightened duties of a common carrier to protect the well-being of its passengers.

"A legal duty owed by one party to another may arise because the law imposes a duty, (1) based upon a special relationship between the parties; or (2) under a particular set of circumstances where a party must exercise due care to avoid a foreseeable injury to another." *Spencer v. American Airlines, Inc.*, 553 S.W.3d 861, 867 (Mo.App. E.D., 2018). The touchstone for duty under principles of general negligence law is foreseeability. *Lopez v. Three Rivers Elec.*

6

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM

*Co-op., Inc.,* 26 S.W.3d 151, 155–56 (Mo.,2000)( "In the absence of a particular relationship recognized by law to create a duty, the concept of foreseeability is paramount in determining whether a duty exists.").

Missouri courts impose a heightened standard of care on common carriers for the care and wellbeing of their passengers. *Boyette v. Trans World Airlines, Inc.*, 954 S.W.2d 350, 354 (Mo.App. E.D.,1997) (citing *Collier v. Bi–State Dev. Agency*, 700 S.W.2d 479, 480 (Mo.App. E.D.1985)) ("A common carrier has a duty to exercise the highest degree of care to safely transport its passengers and protect them while in transit."); see also *Spencer v. American Airlines, Inc.*, 553 S.W.3d 861, 866–67 (Mo.App. E.D., 2018). A contract may not, as a matter of public policy, be written in such a way to shield a defendant from his acts of negligence. *Randolph v. American Airlines, Inc.*, 144 N.E.2d 878, 880, 103 Ohio App. 172, 174 (Ohio App. 1956) ("There is a general rule of law that common carriers cannot stipulate for immunity from their own or their agent's negligence."); see also *Read v. St. Louis, K.C. & N.R. Co.*, 60 Mo. 199, 205, 1875 WL 7768, at *4 (Mo. 1875).

**Elements of Negligence Claim**

In *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) the court stated the well established elements of a negligence claim:

> To state a claim for negligence, a plaintiff must allege, (1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks; (2) breach of the duty; (3) proximate causation; and (4) actual damages. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985).

Plaintiff has alleged those elements in the Count itself at ¶¶s 167-169, with supporting language in the body of the Petition. Defendant does not challenge that Plaintiff has pled the elements of negligence.

**Foreseeability**

7

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM

Under *Adams v. Certain Underwriters at Lloyd's of London*, No. ED 106121, 2019 WL 3103767, at *11 (Mo. Ct. App. July 16, 2019)

> Under the principle of general negligence law, whether a duty exists in a given situation depends upon whether the risk was foreseeable." *Id.* at 156. "The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it." *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990)

Plaintiffs' allegation of foreseeability appears in Count III of their Petition at ¶ 168:

> It was reasonably foreseeable that Defendant and its agents' improper treatment of the Plaintiffs in the manner in which they were removed from the plane would result in aggravation, inconvenience, distress, and would deprive them of their family trip.

The allegation also appears in the body of the Petition at ¶ 149:

> It was reasonably foreseeable to Defendant that Plaintiffs would suffer damages if Defendant, through its authorized representatives, removed Plaintiffs from the plane and made it impossible for them to go to Las Vegas the next day.

The outrageous treatment the Plaintiffs received at the hands of Frontier's employee was foreseeable. Airline employees are given great power to identify and eliminate potential threats to the safety of the flight. They are given discretion to eject passengers from flights for vaguely defined reasons, such as "failing to follow directions" and "unruly behavior." It is an unfortunate reality that gate agents or flight attendants do, at times, misuse these "policing" powers to abuse unlucky passengers who catch them on a bad day or somehow rub them the wrong way. This behavior goes unchecked and unpunished because the airline, never wanting to admit liability to the complaining passenger, is willing to uncritically back its agent's embellished or fabricated version of events. It is axiomatic of human nature that unchecked authority is subject to abuse. Passenger abuse is foreseeable, it happens with regularity, and if what Plaintiffs have pled is true, then Frontier clearly has not done enough to address the risk.

**Actual Damages**

8

The *Frost* court further stated at 853:

> On appeal, as in its motion to dismiss, Respondent only asserts that Appellants did not adequately plead actual damages. This argument must fail. The amended petition included multiple allegations of damages proximately caused by Respondent's disclosure and freezing of Appellants' accounts. Specifically, the amended petition alleged that, (1) Appellants' private financial information was disclosed to the public; (2) when Appellants repeatedly attempted to use their accounts, they were barred from accessing over $3 million in assets specifically held for investment purposes for a period of ten days, and as a result were prohibited from making any investment trades during that time; and (3) Respondent disclosed that Appellants had assets in excess of $3 million to Appellants' opponent in the underlying lawsuit, Frost Bank, at a time when Appellants and Frost Bank were negotiating a settlement and the disclosure affected the settlement value of that case.
>
> Appellants need not quantify the exact amount of their damages in their amended petition in order to survive a motion to dismiss… Appellants pleaded that the freezing of the accounts prevented them from making stock trades they attempted to make. The specific nature of these trades and any financial loss caused by the inability to make them must be investigated in the discovery portion of the lawsuit. This is also true of the disclosure's effect on the settlement value of the underlying lawsuit; discovery is required to determine the extent of the damages. In each instance, the allegation of harm, along with the other elements of the cause of action which are not contested, is sufficient to survive a motion to dismiss. We treat the facts alleged in the petition as true and construe them liberally in favor of the plaintiffs. The amended petition has stated a claim, because if Appellants prove the facts it sets forth, they would be entitled to relief. (Citation omitted).

While it is true that Plaintiffs certainly experienced fear, which alone would not support the claim due to the requirement in an emotional distress case that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant," *Jarrett v. Jones,* 258 S.W.3d 442, 448 (Mo. banc 2008), *Biersmith v. Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 88 (Mo. Ct. App. 2011) - Plaintiff has alleged other damages including humiliation, disgrace, stress, outrage, loss of liberty ¶ 133, heat exposure, ¶ 90, migraine headache, ¶¶ 97-98, physical discomfort to the infant children leading to screaming, ¶ 90, loss of the trip, ¶ 111 and being subject to libelous falsehoods to Plaintiff Shelly Branch's mother, who was until then an uninvolved third party, ¶ 126. Those damages support the claim.

9

The court should therefore deny Defendant 's Motion to Dismiss as to Count III.

## COUNT 4 – INTENTIONAL TORT

Defendant asserts that Count IV is neither for false imprisonment, p. 7-8 nor for intentional infliction of emotional distress, p. 8.  In those statements Defendant is correct but is not addressing the issue at hand.  The claim is intentional tort (in the alternative), as stated in the title, a/k/a prima facie tort.

The elements of prima facie tort are (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act.  *LPP Mortg., Ltd. v. Marcin, Inc.*, 224 S.W.3d 50, 53–54 (Mo.App. W.D.,2007) (citing *Nazeri v. Mo. Valley Coll.,* 860 S.W.2d 303, 315 (Mo. banc 1993)).  Once these threshold criteria are established, the court applies a "balancing of interests" test which includes four components:  "(T)he nature and seriousness of the harm; the interests promoted by the actor's conduct; the character of the means used; and the motive of the actor." *Kiphart v. Cmty. Fed. Sav. & Loan Ass'n*, 729 S.W.2d 510, 516 (Mo. Ct. App. 1987).  The "balancing of interests test has been otherwise explained as:  "(1) the physical harm to person or property is weighed more heavily than emotional harm or harm to prospective pecuniary interest, (2) established privileges or rights of the actor are to be afforded proper weight, (3) conduct which offends societal concepts of fairness and morality favor liability, and (4) the degree of malice motivating the actor may be so overwhelming as to tip the scales in favor of liability. *Dowd v. General Motors Acceptance Corp.*, 685 S.W.2d 868, 873 (Mo.App. W.D. 1984).  The final component that courts require is that the Plaintiff's claim does not otherwise fall within a well-defined nominated tort action.  *Id.* at 872.

*See also Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App. 1980), *Billingsley v. Farmers All. Mut. Ins. Co.*, 555 S.W.3d 1, 6–7 (Mo. Ct. App. 2018), with Plaintiff noting that some of those cases are recent, thus endorsing the theory that intentional tort is a viable cause of action in Missouri at the present time.

Plaintiffs' Count IV reads:

166. Plaintiffs incorporate all prior paragraphs.

167. Defendant, through its authorized representatives, intentionally removed Plaintiffs from the plane.

168. At the time there was no statute, law or regulation specifically making unlawful the removal of Plaintiffs from the plane.

169. The removal of Plaintiffs from the plane caused Plaintiffs damages as outlined above.

170. There was no justification and/or there was insufficient justification for Defendant's removal of Plaintiffs from the plane.

These allegations meet the requirements of an intentional tort.  The incident was a breach of contract but it was lawful.  Plaintiffs believe and have pled that Frontier kicked them off of the plane out of a purely malicious intent to injure. (Petition, ¶ 176).  Plaintiffs were injured in multiple ways as described supra and in Plaintiffs' Petition. (Petition, ¶¶s 90, 98, 126, 129-133). Any justifications offered by Frontier for its actions are fabrications and Plaintiffs have pled their falsity. (Petition, ¶¶s 67-69, 81,114, 127, 128).  There was emotional and pecuniary harm, but there was physical harm as well:  the heat exposure and stress of the incident was so great that the babies were screaming and Plaintiff Branch suffered a migraine headache, a crippling condition, for which she has medically-diagnosed susceptibility.  Frontier has the right to deny

11

carriage under certain conditions, but in this instance Plaintiffs have pled that those conditions were not met. Frontier's conduct, as pled by the Plaintiffs, was extremely offensive to societal concepts of fairness and morality. The malice of Frontier's agent was shocking: this was a family traveling with infant twins. Most decent people go out of their way to *assist* people traveling with infants. But Frontier's employee kicked them and their babies off the plane for no explained reason whatsoever. Then she either purposely closed the door to the jetway, locking the plaintiffs inside or she intentionally allowed the door to close, knowing that it would lock itself to the outside. Then, she threatened the Plaintiffs as they were leaving and told them they would get the same treatment if they came back tomorrow!

Finally, the missing "nominated tort" requirement is inapplicable because Plaintiffs are pleading prima facie tort in the alternative to their other claims. *Porter v. Crawford & Co.,* 611 S.W.2d 265, 270 (Mo.App. 1980) ("An early limitation that the doctrine would not support a cause of action if the facts would also support a nominative tort has been largely dispelled by the analysis which suggests that under modern pleading, alternative and even contradictory theories may be pleaded.") In this case, false imprisonment is being pled in the alternative because it contemplates an unlawful act as the genesis of the claim. If Plaintiffs cannot meet a requisite requirement of proof for the very specific tort of false imprisonment, then all of the harm and outrageous treatment that they experienced flowed from the malicious (yet lawful) decision to kick them off the plane. Similarly, negligence is being pled in the alternative because it is an unintentional tort.

Plaintiffs have properly included and pled the claim of prima facie tort in this action and it should not be dismissed.

**COUNT 5 – FALSE IMPRISONMENT**

12

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM

### Elements of the Claim

"The elements of false imprisonment are the restraint of the Plaintiff against his or her will and the unlawfulness of the restraint." *Walker v. Hanke*, 992 S.W.2d 925, 935 (Mo.App. W.D.,1999).  The defendant must intend to cause a confinement and the plaintiff must be aware of the confinement.  *Id.*

Plaintiffs have pled with specificity in their Petition the elements necessary to bring a claim for false imprisonment.  (Petition, ¶¶s 178-179).  As such, it must survive a motion to dismiss.  The Plaintiffs were restrained against their will by the locked jet bridge door, and they were aware of it.  It was an unlawful restraint, and Plaintiffs have pled that it was intentional and believe it was intentional.   (Petition, ¶¶s 86, 89, 135, 178).  It is the defendant's burden to prove any facts otherwise.  Speculation by Defendant's counsel that "maybe they just didn't push the metal bar" is irrelevant at this procedural phase.

Plaintiffs' claim for false imprisonment should not be dismissed.

### *Respondeat Superior*

Defendant also seeks dismissal because of inapplicability of *respondeat superior*.  Traditional respondeat superior principles "require that the injury-causing conduct of an employee be within the course and scope of employment before the employer can be held vicariously liable." *Cluck v. Union Pacific R. Co.*, 367 S.W.3d 25, 29 (Mo.b2012).  The test is not whether the complained of behavior occurred during work hours but it is instead "a test of whether the conduct of that employee was performed in furtherance of the employer's business." *Id*.  The actions must have been "done by virtue of the employment and in furtherance of the business or interest of the employer." *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo.App.2008).

13

The standard, however, is not so rigorous that the conduct must have been approved by the employer. "The conduct causing the tort must naturally arise from the employee's work." *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 872–73 (Mo.App. W.D.,2008) (finding that a bartender placing a toothpick in a patron's beer as a practical joke could be conduct naturally arising from bartending because "she was engaged in an activity—serving a beer—that was usual, customary, and expected of a bartender."). The determination of what conduct arises naturally "amounts to a *requirement of foreseeability*." *Id.* (emphasis added).

When employees have the authority and responsibility to make judgment calls about passenger behavior and then forcibly eject them from flights when needed, it is naturally foreseeable that employees can and will abuse this power. Did Frontier instruct the complained of gate agent to abuse the Plaintiffs? No. Did Frontier instruct the gate agent to identify potentially unruly or intoxicated passengers as part of her job description and prevent them from flying? Yes. It is the same principle as taught in law school: the bar owner didn't tell the bouncer to break the patron's nose, but he wouldn't be terribly surprised to learn that it happened. Hence, foreseeability; and hence, liability.

But the analysis in a case like this should be simplified even more so by the same sort of public policy considerations that cause sexual harassment claims in the workplace to automatically impute liability to the employer when the harasser is a supervisor of a harassed employee.[1] Of course the employer may not have known of or approved of the behavior of its supervisor but the employer created a system of power and vulnerability and then failed to

---

[1] *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 76 (Mo.App. W.D., 2015)( "When the harasser is a supervisor of the harassed employee, agency principles apply, and the employer is held vicariously liable for the acts of the supervisor.")

ensure that it was not abused.  *So too did the airline with respect to the Plaintiffs that it was charged to protect.*

## PUNITIVE DAMAGES

Defendant characterizes too narrowly the standard for punitive damages in Missouri.  The focus of the test is not the severity of the physical danger caused by the defendant: punitive damages are awarded as punishment for malicious conduct that is intended to serve as a deterrent to others.  As early as 1966, the Missouri supreme court stated: "[p]unitive damages are awarded for the purpose of inflicting punishment for wrongdoing, and as an example and deterrent to similar conduct." *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 722 (Mo.1966)

In fact, "it is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award." *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo.,1989).  "(P)unitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences." *Id.*

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Id.*

Contrary to Defendant's assertion, Plaintiffs have pled facts, which if true, do establish outrageous and malicious conduct on the part of Frontier's employee.  She viciously removed them from the plane for no cause whatsoever – she fabricated the reasons out of whole cloth.  She locked them in a sweltering hot jet bridge just to add another malicious stab to the misery she was inflicting.  Then she threatened that she would do the same thing to them "tomorrow" if they dared to show up again.  This lady was unhinged: the Plaintiffs have no idea what motivated

15

such malicious rage. The one thing that the Plaintiffs do know – and is clearly pled in the Plaintiffs' Petition – is that the actions of Frontier's employee towards them were wholly unwarranted, they were outrageous, and they were purely malicious – the epitome of "evil motive."

These are the facts as the Plaintiffs experienced them and as the Petition has pled them. These facts – taken as true for purposes of this motion – establish grounds by which a jury could award punitive damages and the Court should not strike Plaintiffs' demand. As stated at the beginning of this memorandum regarding the standard for dismissal of punitive damages on a Motion to Strike: in *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. 1973) the court said:

> All this opinion holds is that relator has properly pleaded a cause of action and prayer for damages which survives. He must still prove his allegations. In the vast majority of cases nothing close to the standard necessary to recover punitive damages will be met. If it has not been met, the trial court has the power, and the duty, to strike that portion of the petition, but only after plaintiff has had the opportunity to meet his burden of proof and has failed, if so.

Plaintiff has properly pled punitive damages and the court should not dismiss punitive damages on a Motion to Dismiss.

## PRAYER

WHEREFORE, Plaintiffs pray the court to deny Defendant's Motion in its entirety.

Respectfully Submitted,

Attorneys for Plaintiff

   /s/ W. Bevis Schock   .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

   /s/ Thatcher A. Stone   .

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM

*pro hac vice*
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
thatcher@stoneandwoodrowlaw.com
Fax:    646 873-7529
Voice: 855-275-7378

   /s/ William T. WoodrowIII   .
*pro hac vice*
Stone & Woodrow LLP
250 West Main St. Suite 201
Charlottesville, VA 22902
will@stoneandwoodrowlaw.com
Fax:    646 873-7529
Voice: 855-275-7378

CERTIFICATE OF SERVICE

The undersigned certifies that on _____, 2019 he served this document on:
All counsel of record
   /s/ W. Bevis Schock   .
The service method was:  electronic filing.

Electronically Filed - St Louis County - October 17, 2019 - 12:35 PM