Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

**IN THE 21ST JUDICIAL CIRCUIT COURT
ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| ASHFAQ HUSSAIN SYED, | ) | |
| SHELLY RENEE BRANCH, | ) | |
| A.M.S., by Next Friend Ashfaq Hussain Syed, and | ) | |
| N.G.S., by Next Friend Ashfaq Hussain Syed, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No.: 19SL-CC02229-01 |
| | ) | Judge Joseph L. Walsh III |
| FRONTIER AIRLINES, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF
<u>PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE</u>**

Defendant FRONTIER AIRLINES, INC. ("Frontier") by its undersigned counsel for its

Reply in Support of Partial Motion to Dismiss Plaintiffs' Complaint and Motion to Strike, states:

**A.     *This Court should dismiss Count II because the TICKETS Act was signed into law
after the alleged incident occurred.***

Plaintiffs admit: (1) to use the TICKETS Act to establish a standard of care would be to

apply the law *ex post facto*, which the law cannot do; (2) the TICKETS Act does not apply

retroactively; and (3) the TICKETS Act does not create a private right of action. (Plaintiffs'

Response, pp. 4-5.) Plaintiffs do not dispute that the TICKETS Act was signed into law on

October 5, 2018, almost three months after this incident. *Id.* Yet, Plaintiffs inexplicably argue

that the TICKETS Act sets the applicable standard of care and is procedural rather than

substantive such that it does not violate the Missouri constitutional ban on retroactive laws. *Id.*

Plaintiffs' arguments are without merit. This Court should dismiss Plaintiffs' negligence *per se*

claim in Count II of their Petition.

Plaintiffs use *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018) and *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77 (Mo. Ct. App. 2012) to define negligence *per se*. They state, "[n]egligence *per se* arises when the legislature pronounces in a statute what the conduct of a reasonable person should be and the court adopts that statutory standard of care to define the standard of conduct of a reasonable person." *Martinez*, 551 S.W.3d at 496; *Dibrill*, 383 S.W.3d at 84. Plaintiff's reliance on these cases, beyond for definitional purposes, is in error. In *Martinez*, unlike the present case, the ordinance at issue was in effect at all times relevant to the alleged incident. 551 S.W.3d at 493-94. And in *Dibrill*, the issue was whether the plaintiff was "within the class of persons intended to be protected by the cited regulations," a topic not relevant to this case. 383 S.W.3d at 77. Plaintiffs have no support for their argument that a federal law, which did not take effect until after the incident, can set the standard of care for an event that occurred before the law took effect.

"Negligence *per se* is a form of ordinary negligence that results from the violation of a statute." *Burns v. Frontier II Props. Ltd. P'ship*, 106 S.W.3d 1, 4 (Mo. Ct. App. 2003). It is "in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Id.* Inherent in this principle is the requirement that the statute be in effect; a statute that does not exist cannot be violated. Explicit in the definition of negligence *per se* is the requirement that first, the legislature pronounce a standard, second, the courts adopt the standard, and third, a party violate the standard. *Martinez*, 551 S.W.3d at 496; *Dibrill*, 383 S.W.3d at 84. That did not happen here. Here, the incident occurred first, on July 15, 2018. 79 days later, on October 5, 2018, the TICKETS Act was signed into law. Congress did not declare this standard until <u>after</u> the incident. Frontier could not have violated that which was not in effect. Therefore, this Court should dismiss Plaintiffs' negligence *per se* claim (Count II).

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

Plaintiffs classify the TICKETS Act as "procedural." (Plaintiffs' Response, p. 6.) They argue the TICKETS Act "makes no greater demand on the airline than that which the contract requires" and "provides the government [with a] method for enforcing the preexisting rights and duties on behalf of the passengers." *Id.* Plaintiffs' unsupported argument is wrong.

The TICKETS Act was part of the FAA Reauthorization Act of 2018. It imposes new limitations, obligations, and duties on air carriers with respect to revenue passengers traveling on confirmed reservations, which did not previously exist. Pub. L. No. 115-254, 132 Stat. 3186. "Laws that provide for penalties where none existed before … are substantive and are always given only prospective application." *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 769 (Mo. 2007). "[S]ubstantive law creates, defines and regulates rights." *Id.* The TICKETS Act is a substantive law and cannot be applied retroactively. Therefore, this Court should dismiss Count II of Plaintiffs' Petition.

**B.     *This Court should dismiss Count III because Frontier did not breach any legal duty it owed Plaintiffs and Plaintiffs did not suffer any injury.***

Plaintiffs apparently intended Count III of their Petition, titled "negligence, manner of removal from plane" to assert a claim for general negligence. (Plaintiffs' Response, pp. 6-10.) Although this was not at all clear to Frontier, Frontier still argued that Count III should be dismissed because "Plaintiffs have not alleged any facts to establish that Frontier breached a legal duty it owed them or that Plaintiffs suffered any injuries as a result." (Frontier Motion, p. 6.) Plaintiffs' response to Frontier's argument misses the mark; Plaintiffs focus on foreseeability and what duty was owed to them, and their alleged damages, but do not address either the issue of breach of legal duty or their resulting injuries. (Plaintiffs' Response, pp. 6-9.) Therefore, this Court should dismiss Plaintiffs' negligence claim (Count III).

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

"[N]egligence implies injury." *Wise v. Towse*, 366 S.W.2d 506, 510 (Mo. Ct. App. 1963). More specifically, negligence involves the failure of a defendant to perform a duty and injury to the plaintiff as a result of such failure. *Id.* Here, Plaintiffs' Petition is void of any facts alleging that Frontier breached a duty it owed them. (Plaintiffs' Petition attached as Exhibit A, ¶¶ 166-170.) Instead, Plaintiffs have alleged that this incident was precipitated by the fact that the aircraft lacked sufficient oxygen masks to permit them to sit next to each other with their twin toddler daughters positioned on their laps, which Plaintiffs admit was a rational reason for Frontier's actions. *Id.* at ¶¶ 53-54. And Plaintiffs' Petition does not allege that as a result of this incident, they suffered any physical injury or "emotional distress or mental injury that is medically diagnosable and of sufficient severity as to as to be medically significant." *Id.* at ¶¶ 166-170. Indeed, Count III does not even use the word "injury." *Id.* Therefore, this Court should dismiss Count III of Plaintiffs' Petition.

**C.      *This Court should dismiss Count IV because Frontier had no intent to injure Plaintiffs, Plaintiffs have not suffered any injury, Frontier has sufficient justification for its actions, and the alleged conduct is encompassed within existing, nominate torts.***

"In order to make out a submissible case of *prima facie* tort, a claimant must establish: (1) an intentional unlawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act." *LPP Mortg., Ltd. v. Marcin, Inc.*, 224 S.W.3d 50, 53-54 (Mo. Ct. App. 2007). Although Missouri courts recognize *prima facie* tort nominally, they "do not look upon them with favor and have consistently limited the[ir] application*." Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 549 (Mo. Ct. App. 2006).

Plaintiffs' *prima facie* tort claim fails for several reasons. First, "in order for a claim in *prima facie* tort to lie, plaintiff must offer proof of an actual intention to injure, not merely an

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

intent to do the act which may result in the claimed injury." *Thomas v. Special Olympics Mo., Inc.*, 31 S.W.3d 442, 450 (Mo. Ct. App. 2000). "[P]laintiff [must] prove an actual intent to injure, that is, actual malice." *Id.* Here, Plaintiffs have pled the exact <u>opposite</u> of intent to injure; they have alleged that Frontier's actions were triggered by the fact that the aircraft lacked sufficient oxygen masks to permit them to sit next to each other with their twin toddler daughters positioned on their laps. (Exhibit A, ¶ 53.) In other words, Frontier's actions were occasioned by Frontier's intent to protect Plaintiffs in the event of an emergency descent, not to cause them injury. Plaintiffs' *prima facie* tort claim, thus, must fail.

Second, identical to the defect in Plaintiffs' negligence claim, Plaintiffs have not alleged that they suffered any injury as a result of this incident. (Exhibit A, ¶¶ 171-176.) Like Count III, Count IV does not use the word "injury." *Id.* Plaintiffs, thus, cannot sustain their claim.

Third, under the standard applicable in Missouri, "a claimant must establish … the absence of any sufficient justification for the complained of action." *LPP Mortg., Ltd.*, 224 S.W.3d at 54. "A valid business interest will generally provide sufficient justification to defeat a claim for *prima facie* tort." *Id.* at 55. Here, Plaintiffs' argument is circular and their alleged facts cut against their claim. Plaintiffs point to their Petition which first states they "understood that there was a rational reason" for Frontier's actions, but later alleges, "[t]here was no justification and/or there was insufficient justification" for Frontier's actions. (Exhibit A, ¶¶ 54, 170.) Despite the conclusory statement about "insufficient justification," the factual allegations in the Petition establish that there was valid reason for Frontier's actions, and such facts do not support Plaintiffs' *prima facie* tort claim. Moreover, as Plaintiffs' admit, Frontier's actions were lawful. (Plaintiffs' Response, pp. 11, 12; Exhibit A, ¶ 173.) 14 CFR § 121.333(e) governs an air carrier's obligation to furnish supplemental oxygen to passengers in the event of an emergency descent.

Pursuant to this federal regulation, Frontier's aircraft was equipped with eight overhead oxygen masks, four on each side of the row. Frontier could not allow Plaintiffs to sit next to each other with their twin toddler daughters positioned on their laps next to another ticketed passenger in the same row, as there would have been insufficient oxygen masks for the five passengers in the event of an emergency descent. Frontier thus had a valid business interest which provides sufficient justification for its actions and defeats Plaintiffs' claim.

And finally, "the *prima facie* tort doctrine cannot be utilized when a recognized tort is otherwise available." *Thomas*, 31 S.W.3d at 450. In *Thomas*, the court dismissed the plaintiff's *prima facie* tort claim because the conduct asserted by the plaintiff to establish the elements of *prima facie* tort was identical to that asserted to support his intentional infliction of emotional distress claim. *Id.* Here, Plaintiffs' claim suffers the same flaw. The incident was spurred by the fact that the aircraft lacked sufficient oxygen masks to permit Plaintiffs to sit next to each other with their twin daughters positioned on their laps. Since they could not be accommodated on the aircraft in their desired seats, Plaintiffs were removed from the aircraft. Based on this singular set of facts, Plaintiffs have alleged negligence (Count III), intentional tort (Count IV), and breach of contract (Count VI) claims. Missouri courts have held that where the alleged conduct is "encompassed within an existing, nominate tort[,]" plaintiffs are not permitted to sue under *prima facie* tort, because "the nature of this tort is sufficiently ambiguous and open-ended." *Thomas*, 31 S.W.2d at 450. Therefore, this Court should dismiss Count IV of Plaintiffs' Petition.

**D.     This Court should dismiss Count V because Frontier did not intend to confine Plaintiffs and the agent's intentional tort (if any) did not further Frontier's business purposes.**

"[T]here is no false imprisonment unless the defendant intends to cause a confinement." *Bramon v. U-Haul, Inc.*, 945 S.W.2d 676, 681 (Mo. Ct. App. 1997). Unless an act is done with

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

the intention to confine another within fixed boundaries, the actor is not liable "for a merely transitory or otherwise harmless confinement." *Id.* at 681-82. Plaintiffs have not adequately pled facts to support their contention that Frontier, or its agent, intended to confine them in the jetbridge. (Exhibit A, ¶¶ 177-182.) Therefore, this Court should dismiss Plaintiffs' false imprisonment claim (Count V).

Contrary to Plaintiffs' assertion, Plaintiffs have the burden to prove the elements of their claims against Frontier. Plaintiffs have not sufficiently pleaded that Frontier intended to confine them in the jetbridge. *See* Exhibit A, ¶¶ 177-182. "The essential thing is the intent to cause the result." *Francisco v. Kansas City Star Co.*, 629 S.W.2d 524, 530 (Mo. Ct. App. 1981). "If the actor does not have this intent, his conduct does not subject him to liability." *Id.* Here, Plaintiffs have not pleaded any facts to support the element of intent. *See* Exhibit A, ¶¶ 177-182. Specifically, Plaintiffs have not asserted any facts to demonstrate that Frontier, or its agent, intended to confine Plaintiffs in the jetbridge. *Id.* Plaintiffs' false imprisonment claim, thus, fails.

Additionally, Plaintiffs' argument that Frontier's agent acted "in furtherance of" Frontier's business is without merit. (Plaintiffs' Response, pp. 13-15.) As Plaintiffs themselves have alleged, Frontier is in the business of operating regularly scheduled commercial flights. (Exhibit A, ¶ 10.) When it was ascertained that the aircraft lacked sufficient oxygen masks to permit Plaintiffs to sit next to each other with their twin toddler daughters positioned on their laps, Frontier's agent removed Plaintiffs from the aircraft. The removal of Plaintiffs from the aircraft certainly furthered Frontier's business of operating commercial flights pursuant to applicable federal regulations, and was certainly within the course and scope of the agent's employment. But the same cannot be said for an intentional tort. Confining Plaintiffs in the

jetbridge would not serve any business purpose of Frontier. Therefore, this Court should dismiss Count V of Plaintiffs' Petition.

**E.      *This Court should strike Plaintiffs' punitive damages allegations because Plaintiffs have not suffered any injury, Plaintiffs have not adequately established Frontier's intent, and by Plaintiffs' own admission, Frontier had a rational reason for its actions.***

"In a negligence case, punitive damages are awardable only if, at the time of the negligent act, the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury." *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 338 (1996). However, as discussed in relation to Plaintiffs' negligence and *prima facie* tort claims above, Plaintiffs did not suffer any injury as a result of the alleged incident. Plaintiffs' Petition twice alleges that Frontier's conduct "would naturally or probably result in injury" but does not ever allege what injury Plaintiffs suffered. (Exhibit A, ¶¶ 153, 165.) Punitive damages cannot be awarded because Plaintiffs did not suffer any injury. Therefore, this Court should strike Plaintiffs' punitive damages allegations.

And, Plaintiffs themselves note that "punitive damages require a showing of a culpable mental state on the part of the defendant." (Plaintiffs' Response, p. 15 (citing *Burnett v. Griffith*, 796 S.W.2d 780, 787 (Mo. 1989)). But as discussed above, Plaintiffs have not adequately pleaded any facts to establish Frontier's intent to injure them. Instead, Plaintiffs have acknowledged that Frontier had a "rational reason" for removing them from the aircraft when it was established that the aircraft lacked sufficient oxygen masks to permit Plaintiffs to sit next to each other with their twin toddler daughters positioned on their laps. (Exhibit A, ¶¶ 53-54.) Plaintiffs' own allegations cut against their punitive damages claim. Therefore, this Court should strike Plaintiffs' punitive damages allegations.

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

Electronically Filed - St Louis County - October 28, 2019 - 12:41 PM

## CONCLUSION

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Partial Motion to Dismiss and Motion to Strike and order any further relief this Court deems necessary and proper.

Date: October 28, 2019                    Respectfully submitted,

                                          **FRONTIER AIRLINES, INC.**

                                          By: */s/ David C. Berwin*
                                          One of Its Attorneys
                                          David C. Berwin (Bar No.: 06281639)
                                          EVANS & DIXON, L.L.C.
                                          211 North Broadway, Suite 2500
                                          St. Louis, Missouri 63102
                                          Phone: (314) 552-4046
                                          Fax:    (314) 884-4446
                                          dberwin@evans-dixon.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of the Court and served upon all counsel of record via means of the Notice of Electronic Filing pursuant to Court Operating Rule 27.01, and served on all counsel of record by placing a copy in the U.S. Mail, postage prepaid, this 28th day of October, 2019.

                                          By: */s/ David C. Berwin*
                                          David C. Berwin (Bar No.: 06281639)

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM

**IN THE 21ST JUDICIAL CIRCUIT COURT**
**ST. LOUIS COUNTY, MISSOURI**

| | | |
|---|---|---|
| ASHFAQ HUSSAIN SYED, | ) | |
| SHELLY RENEE BRANCH, | ) | |
| A.M.S., by Next Friend Ashfaq Hussain Syed, and | ) | |
| N.G.S., by Next Friend Ashfaq Hussain Syed, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No.: 19SL-CC02229-01 |
| | ) | Judge Joseph L. Walsh III |
| FRONTIER AIRLINES, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**MOTION FOR ADMISSION *PRO HAC VICE***

Defendant FRONTIER AIRLINES, INC. ("Frontier") by its undersigned counsel pursuant to Missouri Supreme Court Rule 9.03 respectfully requests an Order allowing out-of-state attorney Brian T. Maye of the law firm ADLER MURPHY & McQUILLEN LLP to appear on its behalf *pro hac vice* in this case. In support of this motion, Frontier states:

1.      Mr. Maye is employed by the law firm ADLER MURPHY & McQUILLEN LLP, located at 20 South Clark Street, Suite 2500, Chicago, Illinois 60603.

2.      Mr. Maye is a member in good standing of the bar of the State of Illinois. He is admitted to practice to before the following courts: Supreme Court of Illinois, United States Court of Appeals for the Seventh Circuit, United States Court of Appeals for the Armed Forces, United States District Court of the District of Colorado, United States District Court for the Northern District of Illinois, United States District Court for the Northern District of Indiana, United States District Court for the Eastern District of Michigan, United States District Court for the Eastern District of Missouri, United States District Court for the Western District of New

*Page 1 of 3*

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM

York, United States District Court for the Western District of Pennsylvania, and United States District Court for the Eastern District of Wisconsin.

3.      Mr. Maye is not under suspension or disbarment in any state. No member of ADLER MURPHY & McQUILLEN LLP is under suspension or disbarment in any state.

4.      Mr. Maye agrees to comply with the Rules of Professional Conduct as set forth in Mo. Sup. Ct. R. 4, and acknowledges that he is subject to discipline by the courts of this State so long as he is practicing in this State.

5.      Further, Mr. Maye agrees to associate himself with David C. Berwin of the law firm EVANS & DIXON L.L.C. for the duration of the above-captioned matter. Mr. Berwin is a Missouri-licensed attorney and resident attorney of Missouri. Mr. Berwin will continue to accept service of pleadings on behalf of Frontier.

6.      A receipt for payment of the fee required by Missouri Supreme Court Rule 6.01 is attached.

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Motion for Admission *Pro Hac Vice* and enter an Order allowing Brian T. Maye, an out-of-state attorney, to appear *pro hac vice* in this case.

Date: October 29, 2019                              Respectfully submitted,

**FRONTIER AIRLINES, INC.**

By: */s/ David C. Berwin*
One of Its Attorneys
David C. Berwin (Bar No.: 06281639)
EVANS & DIXON, L.L.C.
211 North Broadway, Suite 2500
St. Louis, Missouri 63102
Phone: (314) 552-4046
Fax:     (314) 884-4446
dberwin@evans-dixon.com

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of the Court and served upon all counsel of record via means of the Notice of Electronic Filing pursuant to Court Operating Rule 27.01, and served on all counsel of record by placing a copy in the U.S. Mail, postage prepaid, this 30th day of October, 2019.

By: */s/ David C. Berwin*
David C. Berwin (Bar No.: 06281639)

**19SL-CC02229**

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

IN THE CIRCUIT COURT FOR THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

|  |  |  |
|---|---|---|
| ASHFAQ HUSSAIN SYED, | ) | |
| | ) | |
| SHELLY RENEE BRANCH, | ) | |
| | ) | |
| A.M.S., by Next Friend Ashfaq Hussain Syed, | ) | |
|     (Pending appointment), | ) | |
| | ) | Case No.: |
| N.G.S., by Next Friend Ashfaq Hussain Syed, | ) | |
|     (Pending appointment), | ) | Division: |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| FRONTIER AIR LINES, INC., | ) | |
| | ) | |
| Serve:  Sheriff of Cole County | ) | |
|        Prentice Hall Corporation | ) | |
|        221 Bolivar St | ) | |
|        Jefferson City, MO  65101 | ) | |
| | ) | |
|        Defendant. | ) | |

## INTRODUCTION

1.     This is an action against Frontier Air Lines Inc. (hereinafter "Frontier").  The suit arises

from an incident that occurred on July 15, 2018 when Plaintiffs were mistreated and

harassed by a Frontier Check In and Gate Agent, baselessly removed from their flight,

locked in a hot jetway, threatened by the same Gate Agent about the similar treatment

that they would receive the following day for their rebooked flight. Plaintiff makes claims

for negligent failure to transport, negligence per se, negligent manner of removal from

the airplane, intentional tort, false imprisonment, and breach of contract.

## PARTIES

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

2.    Plaintiffs Ashfaq Hussain Syed and Shelly Renee Branch are single individuals who
      reside together at:

          5 Country Club Dr.
          Fulton, MO, 65251

          Callaway County

3.    Plaintiff A.M.S. is an infant child, Date of Birth:  December 16, 2016, proceeding by
      Next Friend Ashfaq Hussain Syed (presuming appointment).

4.    Plaintiff N.G.S. is an infant child, Date of Birth:  December 16, 2016, A.M.S.'s twin,
      proceeding by Next Friend Ashfaq Hussain Syed, (presuming appointment).

5.    A.M.S. and N.G.S. are the natural children of Syed and Branch and reside with them.

6.    Before any proceedings occur in this case Syed will seek appointment as Next Friend of
      A.M.S. and N.G.S.

7.    Syed and Branch are a mixed-racial couple and Syed is of Middle Eastern complexion
      and descent.

8.    Syed is a Sergeant First Class in the Missouri Army National Guard.

9.    Syed has a Master's Degree in nuclear engineering and works as a supervisor in the
      Control Room of the Callaway Energy Center, a nuclear power plant in Callaway
      County, Missouri, which is owned and operated by Ameren Corporation, a large regional
      electric utility.

10.   Frontier Air Lines is a Nevada corporation with its principal place of business in
      Colorado.  Frontier has a place of business in St. Louis County, Missouri.  Frontier
      operates regularly scheduled commercial air service into St Louis County, Missouri
      multiple times a week, and in this County sells tickets for carriage.  Frontier has
      substantial revenues and expenses in St. Louis County.

EXHIBIT A

11.    Frontier reached into Missouri and sold Plaintiffs the tickets that form the genesis of this

dispute.

## VENUE

12.    The injuries suffered by the Plaintiffs arise directly out of the Defendant's conduct at the

St. Louis Lambert International Airport which is in St. Louis County, Missouri.

## PERSONAL JURISDICTION

13.    Personal Jurisdiction over Defendant is proper in Missouri under the Missouri long arm

statute, RSMo. 506.500.

## JURY DEMAND

14.    Plaintiff demands jury trial.

## GENERAL ALLEGATION OF AGENCY OF FRONTIER EMPLOYEES

15.    Plaintiffs are informed and believe, and thereon allege on inference, that at all times

herein mentioned, the complained of employees of Defendant Frontier were the agents,

servants and employees of Defendant Frontier, and at all times herein mentioned, each

was acting within the scope and course of said agency and employment.

## GENERAL ALLEGATION THAT PLAINTIFFS' COMPLIED WITH ALL LEGAL REQUIREMENTS

16.    All Plaintiffs complied in all respects, whether or not material, with all legal and lawful

conditions, requirements, ordinances, regulations and other legal and contractual

undertakings incumbent upon them in connection with the Frontier Contract of Carriage,

and with the rules and ordinances of the authorities at the airport of departure and

proposed arrival, and all aircraft placards and crew member instructions.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

## FACTUAL ALLEGATIONS

17.    On Thursday, July 12, 2018 Branch went on line to Defendant's website and purchased confirmed tickets for the four Plaintiffs to fly one way from St Louis to Las Vegas, NV, departing on Sunday, July 15, 2018 at 5:59 p.m., Frontier Flight No. F9 87, confirmation no. YB517D.

18.    Syed and Branch were not certain of their return date and that was why Branch only purchased tickets for one way.

19.    Branch selected seats 40D and 40E for herself and Syed.  Because the children were under two at the time there was no charge for their travel and they were expected to sit on Syed and Branch's laps.

20.    The total fee for all four one way tickets was $211.40, which included a $30.00 bag fee for one bag and two $13.00 fees for seats reserved in advance of boarding.

21.    Branch paid for the trip with a Bank of America credit card.

22.    The purpose of the trip was for Syed and Branch to get married in Las Vegas, with their children with them, and then to go as a family to see friends on the California coast.

23.    During the 24 hour period before the flight Branch and Syed checked in and received boarding passes on their phones.

24.    When Plaintiffs arrived at the check in counter, they encountered a Frontier agent whose badge Plaintiff later read to read "Jerrasha Young," ("Young").

25.    Syed handed over his military ID card with his full name:  Ashfaq Hussain Syed.

26.    Young immediately became disagreeable and hostile.

27.    Branch asked Young to waive the bag fee because the Frontier website offers free luggage for military personnel.

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

28.     Young informed Plaintiffs that Syed and Branch would have to pay for the bag, despite the Frontier policy of providing free baggage carriage to military personnel.

29.     Young then informed Plaintiffs that they could not sit together, despite the fact that Plaintiffs had confirmed seating together.

30.     Plaintiff asked why and Young said that if Branch was going to argue and not accept that Branch and Syed could not sit together Plaintiffs would have to cancel their tickets.

31.     At no time did Young explain her reason for refusing to allow the Plaintiffs to sit together or explain that there was an issue with available oxygen masks for five people seated in a three seat row (the four Plaintiffs plus whoever was in 40F).

32.     Young's hostile behavior was especially hard to understand considering that Plaintiffs were traveling with two infant children flying for their first time, as Syed and Branch indicated at the outset of the interaction, and it would be readily apparent to Young or any objectively reasonable person that the family being able to sit together – even if across the aisle – would be a paramount priority for such passengers.

33.     Young re-assigned Syed to a seat on left side of the plane, approximately 3-5 rows forward of row 40, in a window seat, stating that the new seat for Syed was the closest empty seat.

34.     Young gave Syed and Branch new paper boarding passes.

35.     Syed showed Young the children's birth certificates and Young gave Syed boarding passes for the children.

36.     Young then informed Plaintiffs that as military they could both proceed through the TSA "pre-check" line.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

37.  Plaintiffs went to the pre-check line and the TSA agent stated that although Syed's military ID would allow him in that line, Branch would not be allowed in that line because she lacked military ID or other paperwork to allow use of the pre-check line.

38.  Syed and Branch observed that the regular TSA line was not crowded so they proceeded to that line and went through security.

39.  After passing through security, Branch called Frontier customer service to inquire about the seating situation, because they had booked their seating in advance, arrived at the airport with confirmed seats together, and had been given no explanation for why they had been separated.

40.  The Frontier customer service agent Branch reached on the phone, identity unknown to Plaintiffs, ("the First Frontier Phone Agent") told Branch that she was restoring their previous seat assignments and told Branch to inform Young that she, the First Frontier Phone Agent, had done so.

41.  The First Frontier Phone Agent said that Frontier routinely booked families with small children who would ride in their parents' lap and there would be no problem.

42.  When Plaintiffs arrived at the gate, they observed that Young, the same person with whom they had interacted at the baggage check-in counter, was handling the gate.

43.  When Branch informed Young that the First Frontier Phone Agent had restored their seat assignments, Young started speaking to her in a loud and irritated voice.

44.  Young asked, "Who changed your seats?", and Branch told her it was the First Frontier Phone Agent.

45.  Young then stated: "You will listen to me. I am the one that will tell you where you can sit, and I told you that you will not sit together."

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

46.   Branch was made very uncomfortable by this loud and berating behavior as it was creating a scene in front of the other passengers.

47.   Branch asked for an explanation of why they could not sit together and Young still provided no explanation.

48.   Plaintiffs quietly took their seats in the gate waiting area as they wished to avoid further confrontation.

49.   Plaintiffs pre-boarded as a family at approximately 5:30 p.m.

50.   Plaintiffs walked down the aisle and approached their originally assigned seats in Row 40.

51.   At approximately that location a flight attendant confronted them and informed them that she had been made aware about them.

52.   The flight attendant then told Syed and Branch that they would not be able to sit together.

53.   Syed asked the flight attendant why they were receiving this treatment, and she informed Plaintiffs that there was an issue with the available oxygen masks with two lap infants.

54.   Syed and Branch then understood that there was a rational reason for separating them and they abandoned all thoughts and intentions to sit on the same side of the plane in the same row.

55.   Syed and Branch were then standing near their original seats, taking care of their children, and stowing their luggage.

56.   A female passenger sitting in 40F, the window seat on the right side of the plane in Plaintiff's original row, had overheard the conversation about the oxygen masks and she then offered to the flight attendant that she would sit in Syed's reassigned seat so that her

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St. Louis County - May 30, 2019 - 01:37 PM

seat would be empty, and there would be enough oxygen masks for Plaintiff's family to sit together as four people in one row.

57. The flight attendant stated to the woman in 40F "that will not work."

58. The flight attendant left Plaintiffs' immediate area.

59. Plaintiffs were still in the area of row 40.

60. A passenger then walked toward where Plaintiffs were standing.

61. It appeared to Plaintiffs that he was assigned to 39D.

62. Syed asked that passenger if he would swap seats so that this passenger would take the seat approximately row 35 to which Syed was now assigned, so that Syed and one child could sit in closer proximity to Branch and the other child.

63. The man good-naturedly agreed, sat down in Syed's assigned seat, and proceeded to put his head back in such a manner that he appeared to be falling asleep.

64. At this point, all Plaintiffs were in aisle seats, in adjacent rows, one behind the other, with each adult holding a child in his or her lap, and consequently there was no potential issue with oxygen masks.

65. The plane sat at the gate for what seemed an unusually long time.

66. The plane was nearly full.

67. While waiting for departure Syed and Branch did not witness any passengers make any complaint about them to any crew member.

68. Plaintiffs had no interaction with crew during this interval.

69. During this interval, Plaintiffs had brief interactions with other passengers who were charmed by the babies and Syed and Branch otherwise exchanged pleasantries with the other passengers, including the fact that it was the family's first flight together.

8

EXHIBIT A

70. A passenger across the aisle asked if she could take a picture of the family on its first flight together and Syed and Branch agreed.

71. Branch gave the passenger her phone and the passenger took the picture at approximately 6:07 p.m.

72. Branch posted this picture to Facebook at 6:10 p.m.

73. Shortly thereafter, Young boarded the plane, marched up to the Plaintiffs, pointed her finger in Syed and Branch's faces, and said: "You and you get your stuff."

74. Syed and Branch, wordlessly complied by getting their carry on items and children together and followed Young down the aisle.

75. When they reached the front of the plane Branch asked Young where they were going and she said: "Off."

76. When Branch asked why, Young informed Syed and Branch that they would be told once they were off the plane.

77. As they exited the plane into the jetway area just off the airplane Young remained in the airplane doorway.

78. Branch saw another Frontier employee and asked that person to speak to a supervisor.

79. Branch recalls that the person stated that she was a supervisor and introduced herself as "Dez", (sp?).

80. "Dez" was on a walkie-talkie assisting with retrieving Plaintiff's stroller out of the plane's baggage hold.

81. "Dez" stated in response to an inquiry from Branch that Plaintiffs were being removed from the plane because the "passengers and flight attendants felt uncomfortable with Plaintiffs being on the plane.

9

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

82.  Dez then left the area via the jetway.

83.  Branch again asked why they were being removed from the flight and Young stated that it was because they had made "the flight attendants and passengers uncomfortable."

84.  At this point, Plaintiffs observed Young, the flight attendant and another unidentified employee snickering at them from the open plane door.

85.  Plaintiffs pressed the Frontier employees for further explanation but received none.

86.  Young then pushed past the Plaintiffs, proceeded up the jet way with Plaintiff following well behind, and closed the jet way's terminal door, leaving Plaintiffs in the jet way.

87.  Branch pushed on the terminal jetway door but it would not open.

88.  Branch went back to the airplane end of the jet way and found that the airplane door was closed.

89.  At that point Plaintiffs were locked in the jet way tunnel, with a locked door to the terminal on one side and a locked plane door on the other side.

90.  Plaintiff s remained locked in this tunnel, and were unable to exit.  It was hot, they were sweating, and the babies were screaming.  They sat down because of the heat.

91.  Frontier controlled the exits of the jet way.

92.  Syed and Branch understood that it would be unlawful to go out the jetway door leading to the tarmac and did not attempt that method of leaving the jetway.

93.  While still in the jetway Branch called Frontier customer service by her cell phone and a Frontier customer phone service agent, (the "the Second Frontier Phone Agent"), answered.

94.  Branch explained the family's circumstances and the Second Frontier Phone Agent said that her records showed that they were on the plane.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

95.  Branch explained that the family was in the jetway.

96.  The Second Frontier Phone Agent stated that she would get someone to let them out.

97.  Branch was diagnosed years ago for migraine headaches.  Her migraines are sometimes caused by stress.

98.  Branch began developing a headache, likely a migraine, from the stress.

99.  A Frontier Employee opened the terminal door to the jetway and standing next to that person was Young.

100.  The amount of time Plaintiffs and their children were locked in the jetway tunnel is unknown but Plaintiffs estimate a few minutes, approximately 3-10 minutes, and it felt like a very long time.

101.  Branch then initiated another cell phone call to customer service.

102.  Branch spoke to a third telephone customer service agent to request that the family's flight be re-booked.

103.  In the alternative Plaintiff was on hold from the original call and the conversation was a continuation of the call with the Second Frontier Phone Agent – Plaintiff has no clear memory of which it was.  (Plaintiff will hereafter refer to this conversation as being with the "Third Frontier Phone Agent").

104.  The Third Frontier Phone Agent informed Plaintiffs that an agent on the scene needed to make a computer entry showing them as removed from the flight so that rebooking could take place.

105.  The only agent on the scene was Young, so Branch asked the Third Frontier Phone Agent if she, Branch, could put her phone on speaker and the Third Frontier Phone Agent agreed.

11

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

106.    A speaker phone conversation ensued between the Third Frontier Phone Agent, Syed, Branch and Young.

107.    Young initially refused to comply with the Third Frontier Phone Agent's request to change Plaintiff's status from on the flight to off the flight, but eventually, grudgingly, did so, after Third Frontier Phone Agent confronted her and told her it was the least she could do.

108.    The Third Frontier Phone Agent re-booked Plaintiffs for the next day and the phone call ended.

109.    As Plaintiffs were walking away, Young was standing with two other individuals, including "Dez", looking at Plaintiff, and Young started making comments to the Plaintiffs. Branch was taking a video at this point. Young said: "Ma'am I didn't even give you permission to record me and that's illegal. See you tomorrow."

110.    Plaintiffs ignored this comment and kept walking, at which point Young followed them, walked in front, turned around and stopped them, and said: "I don't think you heard me. I will see you at the gate tomorrow. It's the exact same crew as today." She then smiled widely and walked away.

111.    Soon thereafter Syed called customer service and confirmed that it was indeed the exact same crew the next day, at which point he cancelled their flight.

112.    Syed later went on-line to the feedback page filed a written complaint with Frontier stating the above story in abbreviated form.

113.    It is not illegal to take videos of flight attendants and/or otherwise take videos on airplanes, 49 U.S.C. 46504.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

114.    In any case Syed and Branch neither took video on the airplane nor harassed flight attendants.

115.    It is not illegal for customers to trade seats.

116.    Syed's on-line complaint contains an error in that it suggests that Plaintiffs learned of the issue of too many people in the row for the oxygen masks earlier than they actually received that information.

117.    Syed called Frontier approximately the next day, spoke to "Lisa", told the story, and asked for the family's money back.

118.    Frontier opened investigation No. 180821-001664.

119.    Approximately two days later a Frontier representative named "Beth" called Plaintiff Syed's phone and spoke to Syed and Branch by speaker phone.

120.    Beth stated that they had investigated the complaint and found that Syed was taking videos after being told by flight attendants to stop, harassing flight attendants, and asking customers to trade seats.

121.    On August 21, 2019 "Beth" sent an e-mail to Syed stating that he would receive a refund on the credit card ending in 0676.

122.    Plaintiffs have never received a refund on that card or any other card or by any other method.

123.    Approximately two months later Branch wrote a Facebook post describing their experience, which generated considerable social media outrage.

124.    A number of individuals, including Donna Stern, Branch's mother, contacted Frontier and/or posted on Facebook to complain about Frontier's behavior.

125.    Frontier replied by e-mail to some of those who complained by defending its position.

13

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

126.  "Beth", Frontier's investigator, wrote to Branch's mother, Donna Stern, on September 13, 2018 at 4:49 p.m. and stated:

   a.  The children "were not included on their reservation".

   b.  "The parent who had been reassigned was now back in their (sic) original seat",

   c.  The "parents were not complying with crew member instructions and insisted on flying in a way that could jeopardize safety of flight".

   d.  "They were provided with a refund".

## NO COMPARATIVE FAULT

127.  Plaintiffs were not at fault in any way.

## NO LEGAL JUSTIFICATION

128.  There was no legal justification for Frontier to throw Plaintiffs off the flight or imprison Plaintiffs in the jetway.

## DAMAGES

129.  Plaintiffs did not receive the benefit of their contract with Frontier because Frontier did not provide transportation to Plaintiff's family from St. Louis to Las Vegas on July 15, 2018.

130.  Due to the cancellation of their tickets, among other reasons, Syed and Branch have not yet married.

131.  All Plaintiffs lost the benefits associated with their expected trip to Las Vegas and the west coast.

132.  Syed and Branch suffered garden variety emotional damages from the loss of the transportation to Las Vegas.

133.  During the time Plaintiffs' were imprisoned in the jetway all four Plaintiffs suffered fear,

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

loss of liberty, uncomfortable conditions, humiliation, indignity, disgrace, stress,

embarrassment and, mental suffering.

## PUNITIVE DAMAGES – NEGLIGENCE, NEGLIGENCE PER SE

134.   Defendant's conduct in throwing Plaintiffs off the flight, through the actions of Young

and other representatives of Frontier, all acting with actual or apparent authority, showed

complete indifference to or conscious disregard for harm to others.

## PUNITIVE DAMAGES - INTENTIONAL TORT AND FALSE IMPRISONMENT

135.   Defendant's conduct in throwing Plaintiffs off the flight and imprisoning Plaintiffs in the

jetway, through the actions of Young and other representatives of Frontier all acting with

actual or apparent authority, was outrageous because of the Defendant authorized

representatives' evil motives and/or reckless indifference to the rights of Plaintiffs.

136.   Frontier's conduct, through the actions of its authorized agents, from the moment

Plaintiffs arrived at the check-in counter until they left the airport, showed complete

indifference to and/or conscious disregard for the safety and rights of Plaintiffs.

## UNFAIR OR DECEPTIVE PRACTICE
## TO BUMP PAYING PASSENGERS FOR NO REASON

137.   The "Transparency Improvements and Compensation to Keep Every Ticketholder Safe

Act of 2017" or the "TICKETS Act", Public Law No: 115-254, Title IV, Subtitle A, Sec.

425, HR 302, passed by both houses and signed by the president, effective October 5,

2018, ("the statute"), (which is a date after this incident}, states in relevant part:

> It shall be an unfair or deceptive practice under subsection (a) for an air carrier or
>
> foreign air carrier subject to part 250 of title 14, Code of Federal Regulations, to
>
> involuntarily deplane a revenue passenger onboard an aircraft, if the revenue
>
> passenger—

15

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

(A)     is traveling on a confirmed reservation; and

(B)     checked-in for the relevant flight prior to the check-in deadline.

138.    When Defendant expelled Plaintiffs from the airplane, Defendant violated this Act, (although the act was not yet effective).

**COUNT I – NEGLIGENCE**
**Failure to Transport Plaintiffs**
**All Plaintiffs Against Defendant**

139.    Plaintiffs incorporate all prior paragraphs.

140.    Plaintiffs had confirmed paid for tickets to Las Vegas on Frontier flight F9 87 for July 15, 2018 from St. Louis to Las Vegas.

141.    Plaintiffs and Defendant had the relationship of passenger and common carrier.

142.    Defendant had a duty to exercise the highest degree of care to safely transport Plaintiffs to Las Vegas.[1]

143.    Plaintiff boarded the plane for the flight.

144.    Defendant, through its authorized representatives, removed Plaintiffs from the plane.

145.    Defendant, through its authorized representatives, made it impossible for Plaintiffs to go to Las Vegas the next day.

146.    Plaintiffs did not go to Las Vegas at all.

147.    When Defendant, through its authorized representatives, removed Plaintiffs from the plane and prevented them from going the next day, Defendant breached its duty to transport Plaintiffs to Las Vegas.

---

[1]*Spencer v. Am. Airlines, Inc.*, 553 S.W.3d 861, 867 (Mo. Ct. App. 2018), *Dykens v. E. Airlines, Inc.*, 865 F.2d 1271 (9th Cir. 1989), *Goliger Trading Co. of N. Y. v. Chicago & N. W. Ry. Co.*, 184 F.2d 876, 880 (7th Cir. 1950), *Baltimore & O.R. Co. v. Thornton*, 188 F. 868, 877–78 (4th Cir. 1911), *Siegel v. Illinois Cent. R. Co.*, 186 Mo. App. 645, 172 S.W. 420, 422 (1915).

EXHIBIT A

148.    Defendant, through its authorized representatives failed to use to use that degree of care that a very careful person would have used under the same or similar circumstances to provide Plaintiffs transportation to Las Vegas.

149.    It was reasonably foreseeable to Defendant that Plaintiffs would suffer damages if Defendant, through its authorized representatives, removed Plaintiffs from the plane and made it impossible for them to go to Las Vegas the next day.

150.    Plaintiffs suffered the special and general damages associated with the loss of the transportation.

151.    Plaintiffs suffered garden variety emotional distress.

152.    Defendant's conduct, through its authorized representatives, showed complete indifference to or conscious disregard for harm to others.[2]

153.    Defendant's conduct, through its authorized representatives, demonstrated conscious negligence tantamount to intentional wrongdoing because Defendant's authorized agents were conscious of their conduct, and, though having no specific intent to injure, must have been conscious, from their knowledge of surrounding circumstances and existing conditions, that their conduct would naturally or probably result in injury[3] and/or that there was a high probability that their conduct would result in injury.[4]

---

[2]*Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985), MAI 10.02.
[3]*Tubbs v. BNSF Ry. Co., Inc.*, 562 S.W.3d 323, 340–41 (Mo. Ct. App. 2018)
[4]*Poage v. Crane Co.*, 523 S.W.3d 496, 515 (Mo. App. E.D. 2017) (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. App. W.D. 1997) (en banc)), *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 746 (Mo. Ct. App. 2017)

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

WHEREFORE, on Count I Plaintiffs pray for judgment against Defendant under the theory of negligence for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT II – NEGLIGENCE PER SE
### Violation of TICKETS Act
### All Plaintiffs Against Defendant

154.  Plaintiffs incorporate all prior paragraphs.

155.  Plaintiffs checked in prior to the check-in deadline

156.  Plaintiffs entered and went to their seats on the airplane as paid passengers with confirmed reservations.

157.  Defendant forced Plaintiffs to involuntarily deplane.

158.  The TICKETS Act, albeit enacted into law after this incident, defines the duty of the common carrier to transport paying passengers.[5]

159.  Pursuant to the statute under these circumstances it was an unfair or deceptive practice to involuntarily deplane Plaintiffs.

160.  Defendant, through its authorized representatives, violated the statute.

161.  Plaintiffs are members of the class of persons intended to be protected by the statute.

162.  The damages outlined above are the kind of damages the statute was designed to prevent.

163.  The violation of the statute was the cause of Plaintiff's damages.[6]

164.  Defendant's conduct, through its authorized representatives, showed complete indifference to and/or conscious disregard for harm to others.[7]

---

[5] Plaintiffs are unaware of any precedent stating that a later enacted statute may not relate back in a negligence per se claim.
[6] *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018)
[7] *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985), MAI 10.02.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

165.   Defendant's conduct, through its authorized representatives, demonstrated conscious negligence tantamount to intentional wrongdoing because Defendant's authorized agents were conscious of their conduct, and, though, in the alternative, having no specific intent to injure, must have been conscious, from their knowledge of surrounding circumstances and existing conditions, that their conduct would naturally or probably result in injury[8] and/or that there was a high probability that their conduct would result in injury.[9]

WHEREFORE, on Count II Plaintiffs pray for judgment against Defendant under the theory of negligence per se for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT III – NEGLIGENCE
### Manner of Removal from Plane
### All Plaintiffs Against Defendant

166.   Plaintiffs incorporate all prior paragraphs.

167.   Defendant and its agents had a duty as a common carrier to exercise ordinary care under the circumstances for the well-being and treatment of its passengers.

168.   It was reasonably foreseeable that Defendant and its agents' improper treatment of the Plaintiffs in the manner in which they were removed from the plane would result in aggravation, inconvenience, distress, and would deprive them of their family trip.

169.   Defendant and its agents breached the duty of a common carrier to Plaintiffs by the cruel and callous manner by which they ejected Plaintiffs from the aircraft, including by drawing attention to Plaintiffs as though they were criminals in front of all the passengers

---

[8]*Tubbs v. BNSF Ry. Co., Inc.*, 562 S.W.3d 323, 340–41 (Mo. Ct. App. 2018)
[9]*Poage v. Crane Co.*, 523 S.W.3d 496, 515 (Mo. App. E.D. 2017) (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. App. W.D. 1997) (en banc)), *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 746 (Mo. Ct. App. 2017)

EXHIBIT A

heading to Las Vegas, by terrifying Plaintiffs, leaving them in a locked jetway, and

intimidating them into cancelling their rescheduled flight.

170.    As a result, all Plaintiffs suffered monetary damages, inconvenience, embarrassment, and

emotional distress from this outrageous conduct, which continue to affect all Plaintiffs.

WHEREFORE, on Count III Plaintiffs pray for judgment against Defendant under the

theory of negligent manner of removal from the airplane for compensatory damages in excess of

$25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet

and reasonable.

## COUNT IV – INTENTIONAL TORT
### Intentional Removal from Plane
### All Plaintiffs Against Defendant

171.    Plaintiffs incorporate all prior paragraphs.

172.    Defendant, through its authorized representatives, intentionally removed Plaintiffs from

the plane.

173.    At the time there was no statute, law or regulation specifically making unlawful the

removal of Plaintiffs from the plane.

174.    The removal of Plaintiffs from the plane caused Plaintiffs damages as outlined above.

175.    There was no justification and/or there was insufficient justification for Defendant's

removal of Plaintiffs from the plane.[10]

176.    Defendant's conduct, through its authorized representatives, was outrageous because of

Defendant's evil motive or reckless indifference to the safety and rights of others.[11]

---

[10] *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App. 1980), *Billingsley v. Farmers All. Mut. Ins. Co.*, 555 S.W.3d 1, 6–7 (Mo. Ct. App. 2018).
[11] MAI 10.01

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

WHEREFORE, on Count IV Plaintiffs pray for judgment against Defendant under the theory of intentional tort for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT V – INTENTIONAL TORT
### False Imprisonment in the Jetway
### All Plaintiffs Against Defendant

177.   Plaintiff incorporates all prior paragraphs.

178.   By confining Plaintiffs into the overheated jet way with no exit, Young knowingly and unlawfully constrained Plaintiffs and completely restricted their movement without their consent.

179.   The Plaintiffs were aware that they had been locked in the jetway and were not free to leave, which was a substantial interference with their liberty.

180.   The actions of Defendant's agents were reasonably foreseeable in that the actions of defendant's agents were within the scope of their employment.

181.   As a result Plaintiffs suffered damages including humiliation, heat duress, mental anguish, and fear for their wellbeing and that of their children.

182.   Defendant's conduct, through its authorized representatives, was outrageous because of Defendant's evil motive or reckless indifference to the rights of others. [12]

WHEREFORE, on Count V Plaintiffs pray for judgment against Defendant under the theory of false imprisonment for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT VI - BREACH OF CONTRACT
### Breach of Contractual Duty to Transport Plaintiffs to Las Vegas

---

[12] MAI 10.01

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:05 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

**Syed and Branch Against Defendant**

183.    Plaintiff incorporates all prior paragraphs.

184.    Plaintiffs and Defendant Frontier entered into a contract of carriage to transport Plaintiffs from St Louis, MO to Las Vegas, NV.

185.    As consideration for this contract, Plaintiffs paid $211.40.

186.    Plaintiffs complied in every way with the conditions of the contract.

187.    Under the terms of the contract, Frontier may refuse carriage for a limited set of reasons, none of which were applicable when they refused to carry Plaintiffs.

188.    By refusing to carry Plaintiffs after they had purchased valid tickets and engaged in a binding contract, Defendant Frontier breached the contract by its refusal to perform.

189.    As a result, Plaintiffs suffered actual, consequential and benefit of the bargain damages[13] as a direct result of Defendant's breach, in an amount to be determined at trial.

WHEREFORE, on Count VI Plaintiff prays for compensatory damages in a fair and reasonable amount, court costs, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
Attorney for Plaintiffs
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

---

[13] *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.2d 522, 531 (Mo Banc. 1983), *Curators of the University of Missouri v. Suppes*, WD81278, January 8, 2019, 2019 WL 121983.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM

**IN THE 21ST JUDICIAL CIRCUIT COURT**
**ST. LOUIS COUNTY, MISSOURI**

ASHFAQ HUSSAIN SYED,                               )
SHELLY RENEE BRANCH,                               )
A.M.S., by Next Friend Ashfaq Hussain Syed, and    )
N.G.S., by Next Friend Ashfaq Hussain Syed,        )
                                                   )
    *Plaintiffs*,                              )
                                                   )
v.                                                 )    Case No.: 19SL-CC02229-01
                                                   )    Judge Joseph L. Walsh III
FRONTIER AIRLINES, INC.,                           )
                                                   )
    *Defendant*.                               )

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**MOTION FOR ADMISSION *PRO HAC VICE***

Defendant FRONTIER AIRLINES, INC. ("Frontier") by its undersigned counsel pursuant to Missouri Supreme Court Rule 9.03 respectfully requests an Order allowing out-of-state attorney Tara Shelke of the law firm ADLER MURPHY & McQUILLEN LLP to appear on its behalf *pro hac vice* in this case. In support of this motion, Frontier states:

1.      Ms. Shelke is employed by the law firm ADLER MURPHY & McQUILLEN LLP, located at 20 South Clark Street, Suite 2500, Chicago, Illinois 60603.

2.      Ms. Shelke is a member in good standing of the bar of the State of Illinois. She is admitted to practice to before the following courts: Supreme Court of Illinois, United States District Court for the Northern District of Illinois, United States District Court for the Western District of Pennsylvania, and United States District Court for the Eastern District of Missouri.

3.      Ms. Shelke is not under suspension or disbarment in any state. No member of ADLER MURPHY & McQUILLEN LLP is under suspension or disbarment in any state.

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM

4.      Ms. Shelke agrees to comply with the Rules of Professional Conduct as set forth in Mo. Sup. Ct. R. 4, and acknowledges that she is subject to discipline by the courts of this State so long as she is practicing in this State.

5.      Ms. Shelke also agrees to associate herself with David C. Berwin of the law firm EVANS & DIXON L.L.C. for the duration of the above-captioned matter. Mr. Berwin is a Missouri-licensed attorney and resident attorney of Missouri. Mr. Berwin will continue to accept service of pleadings on behalf of Frontier.

6.      A receipt for payment of the fee required by Missouri Supreme Court Rule 6.01 is attached.

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Motion for Admission *Pro Hac Vice* and enter an Order allowing Tara Shelke, an out-of-state attorney, to appear *pro hac vice* in this case.

Date: October 29, 2019                           Respectfully submitted,

**FRONTIER AIRLINES, INC.**

By: */s/ David C. Berwin*
One of Its Attorneys
David C. Berwin (Bar No.: 06281639)
EVANS & DIXON, L.L.C.
211 North Broadway, Suite 2500
St. Louis, Missouri 63102
Phone: (314) 552-4046
Fax:    (314) 884-4446
dberwin@evans-dixon.com

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was electronically filed with the Clerk of the Court and served upon all counsel of record via means of the Notice of Electronic Filing pursuant to Court Operating Rule 27.01, and served on all counsel of record by placing a copy in the U.S. Mail, postage prepaid, this 29th day of October, 2019.

By: */s/ David C. Berwin*
David C. Berwin (Bar No.: 06281639)

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

**19SL-CC02229**

IN THE CIRCUIT COURT FOR THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| ASHFAQ HUSSAIN SYED, | ) | |
| | ) | |
| SHELLY RENEE BRANCH, | ) | |
| | ) | |
| A.M.S., by Next Friend Ashfaq Hussain Syed, | ) | |
|     (Pending appointment), | ) | |
| | ) | Case No.: |
| N.G.S., by Next Friend Ashfaq Hussain Syed, | ) | |
|     (Pending appointment), | ) | Division: |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| FRONTIER AIR LINES, INC., | ) | |
| | ) | |
| Serve:    Sheriff of Cole County | ) | |
|          Prentice Hall Corporation | ) | |
|          221 Bolivar St | ) | |
|          Jefferson City, MO  65101 | ) | |
| | ) | |
|     Defendant. | ) | |

## INTRODUCTION

1.    This is an action against Frontier Air Lines Inc. (hereinafter "Frontier").  The suit arises

from an incident that occurred on July 15, 2018 when Plaintiffs were mistreated and

harassed by a Frontier Check In and Gate Agent, baselessly removed from their flight,

locked in a hot jetway, threatened by the same Gate Agent about the similar treatment

that they would receive the following day for their rebooked flight. Plaintiff makes claims

for negligent failure to transport, negligence per se, negligent manner of removal from

the airplane, intentional tort, false imprisonment, and breach of contract.

## PARTIES

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

2.    Plaintiffs Ashfaq Hussain Syed and Shelly Renee Branch are single individuals who

reside together at:

       5 Country Club Dr.
       Fulton, MO, 65251

       Callaway County

3.    Plaintiff A.M.S. is an infant child, Date of Birth:  December 16, 2016, proceeding by

Next Friend Ashfaq Hussain Syed (presuming appointment).

4.    Plaintiff N.G.S. is an infant child, Date of Birth:  December 16, 2016, A.M.S.'s twin,

proceeding by Next Friend Ashfaq Hussain Syed, (presuming appointment).

5.    A.M.S. and N.G.S. are the natural children of Syed and Branch and reside with them.

6.    Before any proceedings occur in this case Syed will seek appointment as Next Friend of

A.M.S. and N.G.S.

7.    Syed and Branch are a mixed-racial couple and Syed is of Middle Eastern complexion

and descent.

8.    Syed is a Sergeant First Class in the Missouri Army National Guard.

9.    Syed has a Master's Degree in nuclear engineering and works as a supervisor in the

Control Room of the Callaway Energy Center, a nuclear power plant in Callaway

County, Missouri, which is owned and operated by Ameren Corporation, a large regional

electric utility.

10.   Frontier Air Lines is a Nevada corporation with its principal place of business in

Colorado.  Frontier has a place of business in St. Louis County, Missouri.  Frontier

operates regularly scheduled commercial air service into St Louis County, Missouri

multiple times a week, and in this County sells tickets for carriage.  Frontier has

substantial revenues and expenses in St. Louis County.

EXHIBIT A

11.   Frontier reached into Missouri and sold Plaintiffs the tickets that form the genesis of this dispute.

## VENUE

12.   The injuries suffered by the Plaintiffs arise directly out of the Defendant's conduct at the St. Louis Lambert International Airport which is in St. Louis County, Missouri.

## PERSONAL JURISDICTION

13.   Personal Jurisdiction over Defendant is proper in Missouri under the Missouri long arm statute, RSMo. 506.500.

## JURY DEMAND

14.   Plaintiff demands jury trial.

## GENERAL ALLEGATION OF AGENCY OF FRONTIER EMPLOYEES

15.   Plaintiffs are informed and believe, and thereon allege on inference, that at all times herein mentioned, the complained of employees of Defendant Frontier were the agents, servants and employees of Defendant Frontier, and at all times herein mentioned, each was acting within the scope and course of said agency and employment.

## GENERAL ALLEGATION THAT PLAINTIFFS' COMPLIED WITH ALL LEGAL REQUIREMENTS

16.   All Plaintiffs complied in all respects, whether or not material, with all legal and lawful conditions, requirements, ordinances, regulations and other legal and contractual undertakings incumbent upon them in connection with the Frontier Contract of Carriage, and with the rules and ordinances of the authorities at the airport of departure and proposed arrival, and all aircraft placards and crew member instructions.

3

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

## FACTUAL ALLEGATIONS

17. On Thursday, July 12, 2018 Branch went on line to Defendant's website and purchased confirmed tickets for the four Plaintiffs to fly one way from St Louis to Las Vegas, NV, departing on Sunday, July 15, 2018 at 5:59 p.m., Frontier Flight No. F9 87, confirmation no. YB517D.

18. Syed and Branch were not certain of their return date and that was why Branch only purchased tickets for one way.

19. Branch selected seats 40D and 40E for herself and Syed. Because the children were under two at the time there was no charge for their travel and they were expected to sit on Syed and Branch's laps.

20. The total fee for all four one way tickets was $211.40, which included a $30.00 bag fee for one bag and two $13.00 fees for seats reserved in advance of boarding.

21. Branch paid for the trip with a Bank of America credit card.

22. The purpose of the trip was for Syed and Branch to get married in Las Vegas, with their children with them, and then to go as a family to see friends on the California coast.

23. During the 24 hour period before the flight Branch and Syed checked in and received boarding passes on their phones.

24. When Plaintiffs arrived at the check in counter, they encountered a Frontier agent whose badge Plaintiff later read to read "Jerrasha Young," ("Young").

25. Syed handed over his military ID card with his full name: Ashfaq Hussain Syed.

26. Young immediately became disagreeable and hostile.

27. Branch asked Young to waive the bag fee because the Frontier website offers free luggage for military personnel.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

28.  Young informed Plaintiffs that Syed and Branch would have to pay for the bag, despite the Frontier policy of providing free baggage carriage to military personnel.

29.  Young then informed Plaintiffs that they could not sit together, despite the fact that Plaintiffs had confirmed seating together.

30.  Plaintiff asked why and Young said that if Branch was going to argue and not accept that Branch and Syed could not sit together Plaintiffs would have to cancel their tickets.

31.  At no time did Young explain her reason for refusing to allow the Plaintiffs to sit together or explain that there was an issue with available oxygen masks for five people seated in a three seat row (the four Plaintiffs plus whoever was in 40F).

32.  Young's hostile behavior was especially hard to understand considering that Plaintiffs were traveling with two infant children flying for their first time, as Syed and Branch indicated at the outset of the interaction, and it would be readily apparent to Young or any objectively reasonable person that the family being able to sit together – even if across the aisle – would be a paramount priority for such passengers.

33.  Young re-assigned Syed to a seat on left side of the plane, approximately 3-5 rows forward of row 40, in a window seat, stating that the new seat for Syed was the closest empty seat.

34.  Young gave Syed and Branch new paper boarding passes.

35.  Syed showed Young the children's birth certificates and Young gave Syed boarding passes for the children.

36.  Young then informed Plaintiffs that as military they could both proceed through the TSA "pre-check" line.

5

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

37. Plaintiffs went to the pre-check line and the TSA agent stated that although Syed's military ID would allow him in that line, Branch would not be allowed in that line because she lacked military ID or other paperwork to allow use of the pre-check line.

38. Syed and Branch observed that the regular TSA line was not crowded so they proceeded to that line and went through security.

39. After passing through security, Branch called Frontier customer service to inquire about the seating situation, because they had booked their seating in advance, arrived at the airport with confirmed seats together, and had been given no explanation for why they had been separated.

40. The Frontier customer service agent Branch reached on the phone, identity unknown to Plaintiffs, ("the First Frontier Phone Agent") told Branch that she was restoring their previous seat assignments and told Branch to inform Young that she, the First Frontier Phone Agent, had done so.

41. The First Frontier Phone Agent said that Frontier routinely booked families with small children who would ride in their parents' lap and there would be no problem.

42. When Plaintiffs arrived at the gate, they observed that Young, the same person with whom they had interacted at the baggage check-in counter, was handling the gate.

43. When Branch informed Young that the First Frontier Phone Agent had restored their seat assignments, Young started speaking to her in a loud and irritated voice.

44. Young asked, "Who changed your seats?", and Branch told her it was the First Frontier Phone Agent.

45. Young then stated: "You will listen to me. I am the one that will tell you where you can sit, and I told you that you will not sit together."

EXHIBIT A

46.    Branch was made very uncomfortable by this loud and berating behavior as it was creating a scene in front of the other passengers.

47.    Branch asked for an explanation of why they could not sit together and Young still provided no explanation.

48.    Plaintiffs quietly took their seats in the gate waiting area as they wished to avoid further confrontation.

49.    Plaintiffs pre-boarded as a family at approximately 5:30 p.m.

50.    Plaintiffs walked down the aisle and approached their originally assigned seats in Row 40.

51.    At approximately that location a flight attendant confronted them and informed them that she had been made aware about them.

52.    The flight attendant then told Syed and Branch that they would not be able to sit together.

53.    Syed asked the flight attendant why they were receiving this treatment, and she informed Plaintiffs that there was an issue with the available oxygen masks with two lap infants.

54.    Syed and Branch then understood that there was a rational reason for separating them and they abandoned all thoughts and intentions to sit on the same side of the plane in the same row.

55.    Syed and Branch were then standing near their original seats, taking care of their children, and stowing their luggage.

56.    A female passenger sitting in 40F, the window seat on the right side of the plane in Plaintiff's original row, had overheard the conversation about the oxygen masks and she then offered to the flight attendant that she would sit in Syed's reassigned seat so that her

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St. Louis County - May 30, 2019 - 01:37 PM

seat would be empty, and there would be enough oxygen masks for Plaintiff's family to sit together as four people in one row.

57. The flight attendant stated to the woman in 40F "that will not work."

58. The flight attendant left Plaintiffs' immediate area.

59. Plaintiffs were still in the area of row 40.

60. A passenger then walked toward where Plaintiffs were standing.

61. It appeared to Plaintiffs that he was assigned to 39D.

62. Syed asked that passenger if he would swap seats so that this passenger would take the seat approximately row 35 to which Syed was now assigned, so that Syed and one child could sit in closer proximity to Branch and the other child.

63. The man good-naturedly agreed, sat down in Syed's assigned seat, and proceeded to put his head back in such a manner that he appeared to be falling asleep.

64. At this point, all Plaintiffs were in aisle seats, in adjacent rows, one behind the other, with each adult holding a child in his or her lap, and consequently there was no potential issue with oxygen masks.

65. The plane sat at the gate for what seemed an unusually long time.

66. The plane was nearly full.

67. While waiting for departure Syed and Branch did not witness any passengers make any complaint about them to any crew member.

68. Plaintiffs had no interaction with crew during this interval.

69. During this interval, Plaintiffs had brief interactions with other passengers who were charmed by the babies and Syed and Branch otherwise exchanged pleasantries with the other passengers, including the fact that it was the family's first flight together.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

70. A passenger across the aisle asked if she could take a picture of the family on its first flight together and Syed and Branch agreed.

71. Branch gave the passenger her phone and the passenger took the picture at approximately 6:07 p.m.

72. Branch posted this picture to Facebook at 6:10 p.m.

73. Shortly thereafter, Young boarded the plane, marched up to the Plaintiffs, pointed her finger in Syed and Branch's faces, and said: "You and you get your stuff."

74. Syed and Branch, wordlessly complied by getting their carry on items and children together and followed Young down the aisle.

75. When they reached the front of the plane Branch asked Young where they were going and she said: "Off."

76. When Branch asked why, Young informed Syed and Branch that they would be told once they were off the plane.

77. As they exited the plane into the jetway area just off the airplane Young remained in the airplane doorway.

78. Branch saw another Frontier employee and asked that person to speak to a supervisor.

79. Branch recalls that the person stated that she was a supervisor and introduced herself as "Dez", (sp?).

80. "Dez" was on a walkie-talkie assisting with retrieving Plaintiff's stroller out of the plane's baggage hold.

81. "Dez" stated in response to an inquiry from Branch that Plaintiffs were being removed from the plane because the "passengers and flight attendants felt uncomfortable with Plaintiffs being on the plane.

9

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

82. Dez then left the area via the jetway.

83. Branch again asked why they were being removed from the flight and Young stated that it was because they had made "the flight attendants and passengers uncomfortable."

84. At this point, Plaintiffs observed Young, the flight attendant and another unidentified employee snickering at them from the open plane door.

85. Plaintiffs pressed the Frontier employees for further explanation but received none.

86. Young then pushed past the Plaintiffs, proceeded up the jet way with Plaintiff following well behind, and closed the jet way's terminal door, leaving Plaintiffs in the jet way.

87. Branch pushed on the terminal jetway door but it would not open.

88. Branch went back to the airplane end of the jet way and found that the airplane door was closed.

89. At that point Plaintiffs were locked in the jet way tunnel, with a locked door to the terminal on one side and a locked plane door on the other side.

90. Plaintiff s remained locked in this tunnel, and were unable to exit.  It was hot, they were sweating, and the babies were screaming.  They sat down because of the heat.

91. Frontier controlled the exits of the jet way.

92. Syed and Branch understood that it would be unlawful to go out the jetway door leading to the tarmac and did not attempt that method of leaving the jetway.

93. While still in the jetway Branch called Frontier customer service by her cell phone and a Frontier customer phone service agent, (the "the Second Frontier Phone Agent"), answered.

94. Branch explained the family's circumstances and the Second Frontier Phone Agent said that her records showed that they were on the plane.

10

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

95.     Branch explained that the family was in the jetway.

96.     The Second Frontier Phone Agent stated that she would get someone to let them out.

97.     Branch was diagnosed years ago for migraine headaches. Her migraines are sometimes caused by stress.

98.     Branch began developing a headache, likely a migraine, from the stress.

99.     A Frontier Employee opened the terminal door to the jetway and standing next to that person was Young.

100.     The amount of time Plaintiffs and their children were locked in the jetway tunnel is unknown but Plaintiffs estimate a few minutes, approximately 3-10 minutes, and it felt like a very long time.

101.     Branch then initiated another cell phone call to customer service.

102.     Branch spoke to a third telephone customer service agent to request that the family's flight be re-booked.

103.     In the alternative Plaintiff was on hold from the original call and the conversation was a continuation of the call with the Second Frontier Phone Agent – Plaintiff has no clear memory of which it was. (Plaintiff will hereafter refer to this conversation as being with the "Third Frontier Phone Agent").

104.     The Third Frontier Phone Agent informed Plaintiffs that an agent on the scene needed to make a computer entry showing them as removed from the flight so that rebooking could take place.

105.     The only agent on the scene was Young, so Branch asked the Third Frontier Phone Agent if she, Branch, could put her phone on speaker and the Third Frontier Phone Agent agreed.

EXHIBIT A

106. A speaker phone conversation ensued between the Third Frontier Phone Agent, Syed, Branch and Young.

107. Young initially refused to comply with the Third Frontier Phone Agent's request to change Plaintiff's status from on the flight to off the flight, but eventually, grudgingly, did so, after Third Frontier Phone Agent confronted her and told her it was the least she could do.

108. The Third Frontier Phone Agent re-booked Plaintiffs for the next day and the phone call ended.

109. As Plaintiffs were walking away, Young was standing with two other individuals, including "Dez", looking at Plaintiff, and Young started making comments to the Plaintiffs. Branch was taking a video at this point. Young said: "Ma'am I didn't even give you permission to record me and that's illegal. See you tomorrow."

110. Plaintiffs ignored this comment and kept walking, at which point Young followed them, walked in front, turned around and stopped them, and said: "I don't think you heard me. I will see you at the gate tomorrow. It's the exact same crew as today." She then smiled widely and walked away.

111. Soon thereafter Syed called customer service and confirmed that it was indeed the exact same crew the next day, at which point he cancelled their flight.

112. Syed later went on-line to the feedback page filed a written complaint with Frontier stating the above story in abbreviated form.

113. It is not illegal to take videos of flight attendants and/or otherwise take videos on airplanes, 49 U.S.C. 46504.

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

114. In any case Syed and Branch neither took video on the airplane nor harassed flight attendants.

115. It is not illegal for customers to trade seats.

116. Syed's on-line complaint contains an error in that it suggests that Plaintiffs learned of the issue of too many people in the row for the oxygen masks earlier than they actually received that information.

117. Syed called Frontier approximately the next day, spoke to "Lisa", told the story, and asked for the family's money back.

118. Frontier opened investigation No. 180821-001664.

119. Approximately two days later a Frontier representative named "Beth" called Plaintiff Syed's phone and spoke to Syed and Branch by speaker phone.

120. Beth stated that they had investigated the complaint and found that Syed was taking videos after being told by flight attendants to stop, harassing flight attendants, and asking customers to trade seats.

121. On August 21, 2019 "Beth" sent an e-mail to Syed stating that he would receive a refund on the credit card ending in 0676.

122. Plaintiffs have never received a refund on that card or any other card or by any other method.

123. Approximately two months later Branch wrote a Facebook post describing their experience, which generated considerable social media outrage.

124. A number of individuals, including Donna Stern, Branch's mother, contacted Frontier and/or posted on Facebook to complain about Frontier's behavior.

125. Frontier replied by e-mail to some of those who complained by defending its position.

EXHIBIT A

126.    "Beth", Frontier's investigator, wrote to Branch's mother, Donna Stern, on September 13, 2018 at 4:49 p.m. and stated:

    a.    The children "were not included on their reservation".

    b.    "The parent who had been reassigned was now back in their (sic) original seat",

    c.    The "parents were not complying with crew member instructions and insisted on flying in a way that could jeopardize safety of flight".

    d.    "They were provided with a refund".

## NO COMPARATIVE FAULT

127.    Plaintiffs were not at fault in any way.

## NO LEGAL JUSTIFICATION

128.    There was no legal justification for Frontier to throw Plaintiffs off the flight or imprison Plaintiffs in the jetway.

## DAMAGES

129.    Plaintiffs did not receive the benefit of their contract with Frontier because Frontier did not provide transportation to Plaintiff's family from St. Louis to Las Vegas on July 15, 2018.

130.    Due to the cancellation of their tickets, among other reasons, Syed and Branch have not yet married.

131.    All Plaintiffs lost the benefits associated with their expected trip to Las Vegas and the west coast.

132.    Syed and Branch suffered garden variety emotional damages from the loss of the transportation to Las Vegas.

133.    During the time Plaintiffs' were imprisoned in the jetway all four Plaintiffs suffered fear,

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

loss of liberty, uncomfortable conditions, humiliation, indignity, disgrace, stress,

embarrassment and, mental suffering.

### PUNITIVE DAMAGES – NEGLIGENCE, NEGLIGENCE PER SE

134. Defendant's conduct in throwing Plaintiffs off the flight, through the actions of Young

and other representatives of Frontier, all acting with actual or apparent authority, showed

complete indifference to or conscious disregard for harm to others.

### PUNITIVE DAMAGES - INTENTIONAL TORT AND FALSE IMPRISONMENT

135. Defendant's conduct in throwing Plaintiffs off the flight and imprisoning Plaintiffs in the

jetway, through the actions of Young and other representatives of Frontier all acting with

actual or apparent authority, was outrageous because of the Defendant authorized

representatives' evil motives and/or reckless indifference to the rights of Plaintiffs.

136. Frontier's conduct, through the actions of its authorized agents, from the moment

Plaintiffs arrived at the check-in counter until they left the airport, showed complete

indifference to and/or conscious disregard for the safety and rights of Plaintiffs.

### UNFAIR OR DECEPTIVE PRACTICE
### TO BUMP PAYING PASSENGERS FOR NO REASON

137. The "Transparency Improvements and Compensation to Keep Every Ticketholder Safe

Act of 2017" or the "TICKETS Act", Public Law No: 115-254, Title IV, Subtitle A, Sec.

425, HR 302, passed by both houses and signed by the president, effective October 5,

2018, ("the statute"), (which is a date after this incident}, states in relevant part:

> It shall be an unfair or deceptive practice under subsection (a) for an air carrier or
>
> foreign air carrier subject to part 250 of title 14, Code of Federal Regulations, to
>
> involuntarily deplane a revenue passenger onboard an aircraft, if the revenue
>
> passenger—

EXHIBIT A

(A)    is traveling on a confirmed reservation; and

(B)    checked-in for the relevant flight prior to the check-in deadline.

138.    When Defendant expelled Plaintiffs from the airplane, Defendant violated this Act,

(although the act was not yet effective).

**COUNT I – NEGLIGENCE**
**Failure to Transport Plaintiffs**
**All Plaintiffs Against Defendant**

139.    Plaintiffs incorporate all prior paragraphs.

140.    Plaintiffs had confirmed paid for tickets to Las Vegas on Frontier flight F9 87 for July 15,

2018 from St. Louis to Las Vegas.

141.    Plaintiffs and Defendant had the relationship of passenger and common carrier.

142.    Defendant had a duty to exercise the highest degree of care to safely transport Plaintiffs

to Las Vegas.[1]

143.    Plaintiff boarded the plane for the flight.

144.    Defendant, through its authorized representatives, removed Plaintiffs from the plane.

145.    Defendant, through its authorized representatives, made it impossible for Plaintiffs to go

to Las Vegas the next day.

146.    Plaintiffs did not go to Las Vegas at all.

147.    When Defendant, through its authorized representatives, removed Plaintiffs from the

plane and prevented them from going the next day, Defendant breached its duty to

transport Plaintiffs to Las Vegas.

---

[1]*Spencer v. Am. Airlines, Inc.*, 553 S.W.3d 861, 867 (Mo. Ct. App. 2018), *Dykens v. E. Airlines, Inc.*, 865 F.2d 1271 (9th Cir. 1989), *Goliger Trading Co. of N. Y. v. Chicago & N. W. Ry. Co.*, 184 F.2d 876, 880 (7th Cir. 1950), *Baltimore & O.R. Co. v. Thornton*, 188 F. 868, 877–78 (4th Cir. 1911), *Siegel v. Illinois Cent. R. Co.*, 186 Mo. App. 645, 172 S.W. 420, 422 (1915).

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

148.    Defendant, through its authorized representatives failed to use to use that degree of care that a very careful person would have used under the same or similar circumstances to provide Plaintiffs transportation to Las Vegas.

149.    It was reasonably foreseeable to Defendant that Plaintiffs would suffer damages if Defendant, through its authorized representatives, removed Plaintiffs from the plane and made it impossible for them to go to Las Vegas the next day.

150.    Plaintiffs suffered the special and general damages associated with the loss of the transportation.

151.    Plaintiffs suffered garden variety emotional distress.

152.    Defendant's conduct, through its authorized representatives, showed complete indifference to or conscious disregard for harm to others.[2]

153.    Defendant's conduct, through its authorized representatives, demonstrated conscious negligence tantamount to intentional wrongdoing because Defendant's authorized agents were conscious of their conduct, and, though having no specific intent to injure, must have been conscious, from their knowledge of surrounding circumstances and existing conditions, that their conduct would naturally or probably result in injury[3] and/or that there was a high probability that their conduct would result in injury.[4]

---

[2]*Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985), MAI 10.02.
[3]*Tubbs v. BNSF Ry. Co., Inc.*, 562 S.W.3d 323, 340–41 (Mo. Ct. App. 2018)
[4]*Poage v. Crane Co.*, 523 S.W.3d 496, 515 (Mo. App. E.D. 2017) (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. App. W.D. 1997) (en banc)), *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 746 (Mo. Ct. App. 2017)

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

WHEREFORE, on Count I Plaintiffs pray for judgment against Defendant under the theory of negligence for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT II – NEGLIGENCE PER SE
### Violation of TICKETS Act
### All Plaintiffs Against Defendant

154.  Plaintiffs incorporate all prior paragraphs.

155.  Plaintiffs checked in prior to the check-in deadline

156.  Plaintiffs entered and went to their seats on the airplane as paid passengers with confirmed reservations.

157.  Defendant forced Plaintiffs to involuntarily deplane.

158.  The TICKETS Act, albeit enacted into law after this incident, defines the duty of the common carrier to transport paying passengers.[5]

159.  Pursuant to the statute under these circumstances it was an unfair or deceptive practice to involuntarily deplane Plaintiffs.

160.  Defendant, through its authorized representatives, violated the statute.

161.  Plaintiffs are members of the class of persons intended to be protected by the statute.

162.  The damages outlined above are the kind of damages the statute was designed to prevent.

163.  The violation of the statute was the cause of Plaintiff's damages.[6]

164.  Defendant's conduct, through its authorized representatives, showed complete indifference to and/or conscious disregard for harm to others.[7]

---

[5] Plaintiffs are unaware of any precedent stating that a later enacted statute may not relate back in a negligence per se claim.
[6]*Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018)
[7]*Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985), MAI 10.02.

EXHIBIT A

165.   Defendant's conduct, through its authorized representatives, demonstrated conscious negligence tantamount to intentional wrongdoing because Defendant's authorized agents were conscious of their conduct, and, though, in the alternative, having no specific intent to injure, must have been conscious, from their knowledge of surrounding circumstances and existing conditions, that their conduct would naturally or probably result in injury[8] and/or that there was a high probability that their conduct would result in injury.[9]

WHEREFORE, on Count II Plaintiffs pray for judgment against Defendant under the theory of negligence per se for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT III – NEGLIGENCE
**Manner of Removal from Plane**
**All Plaintiffs Against Defendant**

166.   Plaintiffs incorporate all prior paragraphs.

167.   Defendant and its agents had a duty as a common carrier to exercise ordinary care under the circumstances for the well-being and treatment of its passengers.

168.   It was reasonably foreseeable that Defendant and its agents' improper treatment of the Plaintiffs in the manner in which they were removed from the plane would result in aggravation, inconvenience, distress, and would deprive them of their family trip.

169.   Defendant and its agents breached the duty of a common carrier to Plaintiffs by the cruel and callous manner by which they ejected Plaintiffs from the aircraft, including by drawing attention to Plaintiffs as though they were criminals in front of all the passengers

---

[8]*Tubbs v. BNSF Ry. Co., Inc.*, 562 S.W.3d 323, 340–41 (Mo. Ct. App. 2018)
[9]*Poage v. Crane Co.*, 523 S.W.3d 496, 515 (Mo. App. E.D. 2017) (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 164 (Mo. App. W.D. 1997) (en banc)), *Oyler v. Hy-Vee, Inc.*, 539 S.W.3d 742, 746 (Mo. Ct. App. 2017)

19

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St. Louis County - May 30, 2019 - 01:37 PM

heading to Las Vegas, by terrifying Plaintiffs, leaving them in a locked jetway, and intimidating them into cancelling their rescheduled flight.

170.    As a result, all Plaintiffs suffered monetary damages, inconvenience, embarrassment, and emotional distress from this outrageous conduct, which continue to affect all Plaintiffs.

WHEREFORE, on Count III Plaintiffs pray for judgment against Defendant under the theory of negligent manner of removal from the airplane for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT IV – INTENTIONAL TORT
### Intentional Removal from Plane
### All Plaintiffs Against Defendant

171.    Plaintiffs incorporate all prior paragraphs.

172.    Defendant, through its authorized representatives, intentionally removed Plaintiffs from the plane.

173.    At the time there was no statute, law or regulation specifically making unlawful the removal of Plaintiffs from the plane.

174.    The removal of Plaintiffs from the plane caused Plaintiffs damages as outlined above.

175.    There was no justification and/or there was insufficient justification for Defendant's removal of Plaintiffs from the plane.[10]

176.    Defendant's conduct, through its authorized representatives, was outrageous because of Defendant's evil motive or reckless indifference to the safety and rights of others.[11]

---

[10] *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App. 1980), *Billingsley v. Farmers All. Mut. Ins. Co.*, 555 S.W.3d 1, 6–7 (Mo. Ct. App. 2018).
[11] MAI 10.01

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

WHEREFORE, on Count IV Plaintiffs pray for judgment against Defendant under the theory of intentional tort for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT V – INTENTIONAL TORT
### False Imprisonment in the Jetway
### All Plaintiffs Against Defendant

177.   Plaintiff incorporates all prior paragraphs.

178.   By confining Plaintiffs into the overheated jet way with no exit, Young knowingly and unlawfully constrained Plaintiffs and completely restricted their movement without their consent.

179.   The Plaintiffs were aware that they had been locked in the jetway and were not free to leave, which was a substantial interference with their liberty.

180.   The actions of Defendant's agents were reasonably foreseeable in that the actions of defendant's agents were within the scope of their employment.

181.   As a result Plaintiffs suffered damages including humiliation, heat duress, mental anguish, and fear for their wellbeing and that of their children.

182.   Defendant's conduct, through its authorized representatives, was outrageous because of Defendant's evil motive or reckless indifference to the rights of others. [12]

WHEREFORE, on Count V Plaintiffs pray for judgment against Defendant under the theory of false imprisonment for compensatory damages in excess of $25,000.00, punitive damages, costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT VI - BREACH OF CONTRACT
### Breach of Contractual Duty to Transport Plaintiffs to Las Vegas

---

[12] MAI 10.01

21

EXHIBIT A

Electronically Filed - St Louis County - October 30, 2019 - 12:07 PM
Electronically Filed - St Louis County - May 30, 2019 - 01:37 PM

**Syed and Branch Against Defendant**

183.    Plaintiff incorporates all prior paragraphs.

184.    Plaintiffs and Defendant Frontier entered into a contract of carriage to transport Plaintiffs from St Louis, MO to Las Vegas, NV.

185.    As consideration for this contract, Plaintiffs paid $211.40.

186.    Plaintiffs complied in every way with the conditions of the contract.

187.    Under the terms of the contract, Frontier may refuse carriage for a limited set of reasons, none of which were applicable when they refused to carry Plaintiffs.

188.    By refusing to carry Plaintiffs after they had purchased valid tickets and engaged in a binding contract, Defendant Frontier breached the contract by its refusal to perform.

189.    As a result, Plaintiffs suffered actual, consequential and benefit of the bargain damages[13] as a direct result of Defendant's breach, in an amount to be determined at trial.

WHEREFORE, on Count VI Plaintiff prays for compensatory damages in a fair and reasonable amount, court costs, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
Attorney for Plaintiffs
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

---

[13] *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.2d 522, 531 (Mo Banc. 1983), *Curators of the University of Missouri v. Suppes*, WD81278, January 8, 2019, 2019 WL 121983.

22

EXHIBIT A

**In the**

# CIRCUIT COURT

**of St. Louis County, Missouri**

Plaintiff(s)   _Syed_

vs.

Defendant(s)   _Frontier Airlines_

Date   _10/31/19_

Case Number   _17SL-CC-02229-01_

Division   _17_

For File Stamp Only

FILED IN DIV. 17

OCT 31 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

_Order_

Parties appear by counsel on Defendants' Motion to Dismiss. The court hears arguments. The court denies the motion in its entirety.

Defendant granted until Nov. 15, 19 to file its answer.

**SO ORDERED**

Judge _[signature]_

ENTERED: _10/31/19_
(Date)

Attorney _WBingSchulte for TT_   Bar No. _32551_

Address

Phone No. _[signature]_   Fax No.

Attorney _[signature]_   Bar No. _55046_

Address

Phone No.   Fax No.

CCOPR47-WS   Rev. 02/14

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

Plaintiff(s)
ASHFAQ SYED et al.

vs.

Defendant(s)
FRONTIER AIRLINES, Inc.

Date
10/31/19

Case Number
19SL-CC02229-01

Division
17

FILED IN DIV. 17

OCT 31 2019

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS CO.

For File Stamp Only

Cause called FOR A's motions FOR ADMISSION Pro Hac Vice FOR Attorneys TARA Shelke and Brian MAYE. SAID MOTIONS ARE Hereby GRANTED. Attorneys Shelke & MAYE Are Appointed Counsel FOR DEFENDANT FRONTIER Airlines, Inc.

₫ Plaintiff has no objections.

**SO ORDERED**

Judge

ENTERED: 10/31/17
(Date)

Attorney                    Bar No. 32551

Address

Phone No.                   Fax No.

Attorney                    Bar No. 55046

Address

Phone No.                   Fax No.

CCOPR47-WS  Rev. 02/14

Electronically Filed - St Louis County - November 06, 2019 - 09:15 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| ASHFAQ HUSSAIN SYED, | ) |
| SHELLY RENEE BRANCH, | ) |
| A.M.S., by Next Friend Ashfaq Hussain Syed, and | ) |
| N.G.S., by Next Friend Ashfaq Hussain Syed, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Case No.: 19SL-CC02229-01 |
| | )    Judge Joseph L. Walsh III |
| FRONTIER AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPLEMENT TO DEFENDANT'S**
**MOTION FOR ADMISSION PRO HAC VICE**

COMES NOW Defendant FRONTIER AIRLINES, INC., by and through undersigned counsel, and for its Memorandum in Supplement to Motions for Admission *Pro Hac Vice* for Attorneys Brian T. Maye and Tara Shelke of the law firm ADLER MURPHY & McQUILLEN LLP to appear on its behalf *pro hac vice* in this case, states:

1.     Mr. Maye is employed by the law firm ADLER MURPHY & McQUILLEN LLP, located at 20 South Clark Street, Suite 2500, Chicago, Illinois 60603, Illinois Bar Number 6288778.

2.     Ms. Shelke is employed by the law firm ADLER MURPHY & McQUILLEN LLP, located at 20 South Clark Street, Suite 2500, Chicago, Illinois 60603, Illinois Bar Number 6303991.

Respectfully Submitted,

*/s/ David C. Berwin*
David C. Berwin, #55046
Evans & Dixon, L.L.C.
211 North Broadway, Suite 2500
St. Louis, Missouri  63102
(314) 552-4046 – telephone
(314) 884-4446 – facsimile
dberwin@evans-dixon.com
*Attorney for Defendant*
*Frontier Airlines, Inc.*

Electronically Filed - St Louis County - November 06, 2019 - 09:15 AM

**CERTIFICATE OF SERVICE**

I certify that on this 6th day of November, 2019, the foregoing instrument was electronically filed with the Clerk of the Court and served upon all counsel of record via means of the Notice of Electronic Filing pursuant to Court Operating Rule 27.01.

*/s/ David C. Berwin* _____