UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASHFAQ HUSSAIN SYED, SHELLY RENEE BRANCH, A.M.S., by Next Friend Ashfaq Hussain Syed, and N.G.S., by Next Friend Ashfaq Hussain Syed, <br><br>    Plaintiffs, <br><br>v. <br><br>FRONTIER AIR LINES, INC.; HALLMARK AVIATION SERVICES, L.P. <br><br>    Defendants. | Case No. 4:20-cv-407-AGF |

### HALLMARK AVIATION SERVICES, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE PURSUANT TO 12(b)(6) AND 12(f)(2)

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f)(2), Defendant HALLMARK AVIATION SERVICES, L.P. ("Hallmark"), by its undersigned counsel, respectfully requests that this Court dismiss Counts I through V of Plaintiffs' Amended Complaint and Strike Plaintiffs' punitive damages allegations. In support of its Motion to Dismiss and Motion to Strike, Hallmark submits the following Memorandum of Law:

**I.     INTRODUCTION AND PROCEDURAL BACKGROUND**

This civil action arises from an incident that occurred on July 15, 2018 during the boarding of Frontier Flight 87 from St. Louis, Missouri to Las Vegas, Nevada at St. Louis Lambert International Airport. On January 28, 2020, Plaintiffs Ashfaq Hussain Syed ("Syed"), Shelly Renee Branch ("Branch"), A.M.S., by Next Friend Ashfaq Hussain Syed, and N.G.S., by Next

1

Friend Ashfaq Hussain Syed (collectively "Plaintiffs"), filed a six-count Amended Complaint in the 21st Judicial Circuit Court, St. Louis County, Missouri against Hallmark and co-Defendant Frontier Air Lines, Inc. ("Frontier") alleging negligence, negligence *per se*, intentional tort, false imprisonment, and breach of contract claims ("State Court Action"). *See* Plaintiffs' Amended Complaint attached as Exhibit A ("Ex. A").

In their Amended Complaint, Plaintiffs allege they were involuntarily removed from the aircraft and detained in the jet bridge. Ex. A ¶¶ 80-84. Plaintiffs allege that Hallmark and Frontier were negligent (Count I – "intentionally omitted"), negligent *per se* in violating the TICKETS Act of 2018, Pub. L. No. 115-254, § 425, 132 Stat. 3338 (Count II), negligent in the manner in which they removed Plaintiffs from the aircraft (Count III), committed an intentional tort when they removed Plaintiffs from the aircraft (Count IV) and falsely imprisoned Plaintiffs in the jet bridge (Count V). *Id.* at ¶¶ 151-179. Plaintiffs additionally allege that Frontier breached its contractual duty to transport Plaintiffs (Count VI). *Id.* at ¶¶ 180-186. Plaintiffs allege that the conduct of Defendants caused them to suffer compensatory damages in excess of $25,000.00, punitive damages and costs. *Id.* at ¶¶ 140-144, 162, 167, 173, 179.

On February 19, 2020, Hallmark was served with a Summons and Plaintiffs' Amended Complaint in the State Court Action. Hallmark timely removed this action to the United States District Court for the Eastern District of Missouri on March 18, 2020, on the basis of diversity jurisdiction. (*See* Doc. Nos. 1, 2 and 3.)

This Court should dismiss Plaintiffs' Amended Complaint in its entirety because all of Plaintiffs' claims against Hallmark, including their claim for punitive damages, are preempted by the Airline Deregulation Act. In the alternative: Counts II through IV of Plaintiffs' Amended Complaint should be dismissed because they fail to state claims upon which relief can be granted;

2

and Count I of the Amended Complaint and Plaintiffs' punitive damages allegations should be stricken because they are insufficiently pleaded and immaterial to this case.

## II.     ARGUMENT

### A.     Motion to Dismiss Standard

To survive a motion to dismiss under 12(b)(6), a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court is free to "ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Monson v. DEA*, 589 F.3d 952, 961 (8th Cir. 2009). Where "the allegations show on the face of the complaint there is some insuperable bar to relief," a motion to dismiss should be granted. *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). Dismissal is proper under Rule 12(b)(6) when a plaintiff's claim is preempted by the ADA. *See Ferrell v. Air EVAC EMS, Inc.*, 900 F.3d 602, 604 (8th Cir. 2018) (affirming District Court's dismissal based on ADA preemption); *Schmidt v. United Airlines, Inc.*, No. 4:18CV769 HEA, 2019 WL 952103, at *5 (E.D. Mo. Feb. 27, 2019).

### B.     Plaintiffs' state law claims are preempted by the Airline Deregulation Act.

This Court should dismiss the claims asserted against Hallmark, and strike Plaintiffs' request for punitive damages, because they are premised on services offered by an air carrier and are therefore preempted by the Airline Deregulation Act ("ADA"). 49 U.S.C. § 41713(b)(1). The ADA was enacted in 1978 after Congress determined that deregulation of the airline industry would lead to a greater reliance on market forces; promoting greater efficiency, innovation, lower prices, and enhanced quality and variety of air transportation services. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).    To prevent states from circumventing federal deregulation by enacting regulations of their own, the ADA includes an express preemption clause

prohibiting the enactment or enforcement of "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. " *Id.* at 378-79; 49 U.S.C. § 41713(b)(1).

> **1.    The ADA applies to, and regulates the conduct of, Hallmark as a passenger services provider for Frontier Airways.**

An air carrier is defined as an entity "undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Hallmark operates as a staffing agency which provides personnel to carriers, such as Frontier, to fill critical positions within the carrier's passenger services operation. As such, Hallmark is "indirectly" providing air transportation and falls under the definition of an "air carrier" for the purpose of the ADA. Further, the ADA applies to Hallmark as an agent of Frontier. *See Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002) ("ADA preemption is not limited to claims brought directly against air carriers"); *Marlow v. AMR Servs. Corp.*, 870 F. Supp. 295, 299 (D. Haw. 1994) (ADA applied to preempt suit against corporation that serviced and maintained jet bridges used at airports); *Huntleigh Corp. v. Louisiana State Bd. Of Private Sec. Examiners*, 906 F. Supp. 357, 362 (M.D. La. 1995) (agent of air carrier with whom it had contracted to perform pre-departure security screening was within the reach of the ADA).

> **2.    The ADA preempts state law claims related to airline rates, routes or services.**

The breadth of the ADA's preemptive reach is expansive. Any state enforcement action "having a connection with or reference to airline rates, routes, or services" is preempted under the ADA. *Morales*, 504 U.S. at 383-84 (citation omitted). Even state common law rules "fall comfortably within the language of the ADA pre-emption provision," because excluding them would be contrary to the ADA's central purpose of prohibiting the states from intruding into a federally regulated industry. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-84 (2014) (citation

4

omitted). Importantly, there is no presumption against preemption, and ADA preemption applies to generally applicable state laws as well as laws which specifically apply to air carriers. *See Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017) (citation omitted).

The Eighth Circuit applies a two-pronged test to determine whether a state law claim is preempted by the ADA: (1) claim relates to a price, route, or service of a carrier, and (2) is derived from the enactment or enforcement of state law. *Benedetto v. Delta Air Lines, Inc.*, 917 F. Supp. 2d 976, 981 (D. S.D. 2013) (citing *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 852 (8th Cir. 2009)).[1] The Eighth Circuit has adopted a broad definition of the term "services," including "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Watson*, 870 F.3d at 817-18 (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 226 (1995)). A claim derives from the enactment or enforcement of state law if it "serves as a means to guide and police the … practices of the airlines rather than simply giving effect to bargains offered by the airlines and accepted by airline customers." *Benedetto*, 917 F. Supp. 2d at 982 (quoting *Data Mfg.*, 557 F.3d at 853). In other words, a claim is preempted where allowing the plaintiff to move forward would impose a state's public policy or regulation on an airline regarding rates, routes, or services. *Data Mfg.*, 557 F. 3d at 852-53.

In *Benedetto*, the court found that the plaintiff's negligence claims against Delta Airlines for failing to inform him of special check-in procedures were preempted by the ADA. 917 F. Supp. 2d at 981-82. The plaintiff alleged that he properly declared a firearm in his luggage when he checked in for his flight in South Dakota but was not informed by the Delta ticket agent that his

---

[1] Although *Data Mfg.* was decided under the Federal Aviation Administration Authorization Act ("FAAAA"), courts have uniformly held that the preemption provisions in the FAAAA and the ADA contain nearly identical language and are identical in scope. *See Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008); *Data Mfg.*, 557 F.3d at 853 n.2; *Benedetto*, 917 F. Supp. 2d at 980.

5

destination of New York state forbade traveling with firearms. Upon checking into his return flight in New York, the plaintiff was arrested and incarcerated for traveling with a firearm. *Id. at 979.* Applying Supreme Court and Eighth Circuit precedent, the district court held that his negligence claim related to Delta's services was preempted by the ADA. *Id.* at 981-82. The court found that the claims arose out of the enactment or enforcement of a state law because, through South Dakota's negligence law, plaintiff's claim would regulate what airlines must warn of and how they would handle passengers traveling with firearms. *Id.*

Numerous jurisdictions have similarly found that state law intentional tort claims are preempted by the ADA. *See Cintron v. JetBlue Airways Corp.*, 324 F. Supp. 3d 248, 254 (D. Mass. 2018) (holding plaintiff's intentional infliction of emotional distress claim after involuntary removal from plane because of concerns she was a safety risk preempted by ADA); *Al-Watan v. American Airlines, Inc.*, 658 F. Supp. 2d 816, 829-30 (E.D. Mich. 2009) (false imprisonment and intentional infliction of emotional distress claims of passengers of Iraqi descent were preempted by ADA, where captain decided to return to gate, deboard, and question passengers); *Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292, 1300 (N.D. Ill. 1996) (intentional infliction of emotional distress claim preempted to the extent it was based on airline's refusal to transport plaintiff to her destination); *Williams v. Express Airlines I, Inc.*, 825 F. Supp. 831, 833 (W.D. Tenn. 1993) (false imprisonment claim against airline had a close connection with airline service and was preempted by ADA).

> **3. Plaintiffs' state law claims against Hallmark meet the two-factor test for ADA preemption, and should thus be dismissed.**

In this action, Plaintiffs' claims against Hallmark relate to the "services" of an air carrier because they immediately arise from the alleged inadequate explanation of ticketing and boarding procedures, the subsequent denial of boarding, and removal from the aircraft. *See* Ex. A at ¶¶ 38,

6

54, 80-84. In the Eighth Circuit, ticketing and boarding procedures are considered "services" with respect to the ADA. *See Watson*, 870 F.3d at 817-18. The second prong of the test for preemption is likewise met because Plaintiffs' claims against Hallmark all arise under, and indeed, are dependent upon, Missouri state laws and policies. Ex. A at ¶¶ 151-179. The ADA precludes "states from imposing their own public policies or theories of competition or regulation on the operations of a carrier. " *Data Mfg.*, 557 F.3d at 853 (quoting *Wolens*, 513 U.S. at 229 n.5). If Plaintiffs' negligence and intentional tort claims are allowed to proceed, state law would inevitably guide and police the services that Hallmark, Frontier, and other airlines offer; as they will be forced to change their procedures for boarding and seating families with multiple lap infants. *See Benedetto*, 917 F. Supp. 2d at 982.    "As such, Plaintiffs' claims undeniably fall within the preemption umbrella of the ADA. " *Schmidt*, 2019 WL at *5.

As Counts I through V are preempted by the ADA, Plaintiffs' request for punitive damages in relation to those claims are also preempted and accordingly must fail.[2] Claims for punitive damages are properly preempted by the ADA because punitive damages by their very nature seek to punish the entity against whom they are awarded; such damages awarded in response to claims arising out of the price, route, or service of an air carrier would be contrary to the ADA's goals of deregulation. *See West v. Northwest Airlines, Inc.*, 995 F.2d 148, 152 (9th Cir. 1993) (holding ADA preempted claim for punitive damages under state and contract law stemming from an airline's refusal to allow the ticket holder to fly in an overbooked plane); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1423 n.8 (7th Cir. 1996) (holding claim for punitive damages preempted by ADA, since punitive damages claim represented an enlargement or enhancement of the bargain based on state laws or policies).

---

[2] Hallmark is also moving to strike Plaintiffs' claims for punitive damages on the alternate basis that they are inadequately pleaded and immaterial to the case.

7

For the foregoing reasons, this Court should dismiss Counts I through V of Plaintiffs' Amended Complaint and strike Plaintiffs' claims for punitive damages.

**C.    Alternatively, this Court should dismiss Plaintiffs' claims because Plaintiffs have failed to state a claim upon which relief can be granted.**

In the event this Court finds that Plaintiffs' state law claims against Hallmark are not preempted by the ADA, Counts II, III, and IV must nevertheless be dismissed because they each fail to state a claim upon which relief can be granted.

**1.    Count II should be dismissed because the TICKETS Act was not in effect at the time of this incident and does not apply retroactively.**

Under Count II of the Amended Complaint, Plaintiffs allege negligence *per se* against Hallmark for violating the TICKETS Act of 2018, Pub. L. No. 115-254, § 425, 132 Stat. 3338[3]. Ex. A at ¶¶ 151-62. However, the TICKETS Act was not in effect until October 5, 2018, almost three months *after* the subject incident of July 15, 2018. *See* Pub. L. No. 115-254, 132 Stat. 3186; Ex. A at ¶ 149.    Both federal and Missouri courts have held that a statute cannot operate retroactively absent clear congressional intent. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994); *Pipe Fabricators, Inc. v. Dir. of Revenue*, 654 S.W.2d 74, 77 (Mo. 1983). Count II fails to state a claim upon which relief can be granted because the TICKETS Act was not in effect at the time of this incident and does not apply retroactively.

The Supreme Court has explained that when a case implicates a federal statute enacted after the events in suit, as Plaintiffs have done here, the court must determine: (1) whether Congress expressly prescribed the statute's reach; and (2) if no such prescription exists, whether the statute would have a retroactive effect, i.e., "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions

---

[3] The TICKETS Act was signed into law as part of the FAA Reauthorization Act of 2018 and became effective on October 5, 2018. Pub. L. No. 115-254, 132 Stat. 3186.

8

already completed." *Landgraf*, 511 U.S. at 280. If the statute would operate retroactively, the presumption is that the statute does not govern absent clear congressional intent otherwise. *Id.* Similarly, the Supreme Court of Missouri has held that "it is a basic precept that a statute which involves the substance of a matter … operates prospectively unless specific legislative intent of retrospective application expressly appears or there is … unavoidable implication to that effect." *Pipe Fabricators*, 654 S.W.2d at 77. A statute is substantive where it "relates to the rights and duties giving rise to the cause of action. " *Goad v. Treasurer of State*, 372 S.W.3d 1, 7 (Mo. Ct. App. 2011) (quoting *Cook v. Newman*, 142 S.W.3d 880, 893 (Mo. Ct. App. 2004)).

Under either interpretation, the TICKETS Act cannot be applied retroactively. The text of the TICKETS Act provides no indication at all that Congress had retroactive application in mind; in actuality, the evidence points the other way. Congress provided for the Act to take effect "beginning on the date of enactment," October 5, 2018. Pub. L. No. 115-254, § 425, 132 Stat. 3338; *see* Ex. A at ¶ 149. "This is the language of prospective intent, not retrospective revision." *See AT&T Corp. v. Hulteen*, 556 U.S. 701, 713 (2009). Further, as used by the Plaintiffs in their Amended Complaint, the TICKETS Act is clearly substantive and would have a retroactive effect. In their own words, Plaintiffs allege that the Act "defines the duty" on which they base their negligence *per se* claim. Ex. A at ¶ 155. As such, Plaintiffs' use of the TICKETS Act would both increase Hallmark's liability for past conduct and impose on it a new duty with respect to a transaction already completed.

"[E]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *In re ADC Telecommunications, Inc. Sec. Litig.*, 409 F.3d 974, 976 (8th Cir. 2005) (quoting *Landgraf*, 511 U.S. at 265). Therefore, this Court should dismiss Plaintiffs' negligence *per se* claim in Count II

9

of their Amended Complaint because the TICKETS Act was not in effect at the time of the alleged incident and it does not apply retroactively.

> **2. Count III should be dismissed because it does not assert a viable legal theory of recovery.**

Under Count III of the Amended Complaint, Plaintiffs assert a claim for "failure to use highest degree of care, manner of removal from plane." Ex. A at ¶¶ 163-67. Plaintiffs allege that Hallmark breached its duty to them by cruelly and callously ejecting them from the aircraft, treating them like criminals, terrifying them, and intimidating them into cancelling a rescheduled flight. *Id.* at ¶ 166. As a result, Plaintiffs claim that they have suffered monetary damages, inconvenience, embarrassment, and emotional distress. *Id.* at ¶ 167. Plaintiffs have not alleged any physical injuries. *Id.* at ¶¶ 163-67.

Although Count III is titled "failure to use highest degree of care, manner of removal from plane," it is not clear exactly what theory of liability is being asserted here. To the extent Plaintiffs intended to plead negligent infliction of emotional distress, the claim fails because Plaintiffs have not alleged sufficient facts to establish a viable claim. "The tort of negligent infliction of emotional distress is a negligence action. " *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). "The general elements of a negligence action are (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Pendergist v. Pendergrass*, 961 S.W.2d 919, 923 (Mo. Ct. App. 1998). "To recover damages for emotional distress, a plaintiff must show that (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity as to as to be medically significant." *Id.*

Plaintiffs do not allege that they suffered emotional distress or a mental injury that was

medically diagnosed or of such a severity as to be medically significant, which is required to recover for emotional distress where no physical injury is involved. *Van Eaton v. Thon*, 764 S.W.2d 674, 676 (Mo. Ct. App. 1988). To the contrary, Plaintiffs have simply alleged that Syed and Branch suffered "garden variety emotional damages." Ex. A at ¶ 143. At best, Plaintiffs have alleged that they were annoyed because they were not immediately apprised of the reason for their removal from the aircraft. Being annoyed, however, is not actionable under the law. Further, Plaintiffs have not alleged adequate facts to show that Hallmark should have realized that its conduct involved an unreasonable risk of causing them distress. Although Plaintiffs may have been unhappy that they were not allowed to sit together, they admit "that there was a rational reason for separating them;" there were not enough oxygen masks available to permit the two adults and two lap infants to sit together in the same row. *Id.* at ¶¶ 60-61. Hallmark could not have anticipated that its conduct involved an unreasonable risk of causing Plaintiffs distress where its reasoning was concededly rational. *Id.* at ¶ 61.

Therefore, this Court should dismiss Plaintiffs' "failure to use highest degree of care, manner of removal from plane" claim in Count III of their Amended Complaint because it fails to state a claim upon which relief can be granted.

**3.    Count IV should be dismissed because it does not assert a viable legal theory of recovery.**

In Count IV of their Amended Complaint, Plaintiffs allege that Hallmark should be held liable because it allegedly intentionally, and without justification, removed them from the aircraft causing monetary damages, inconvenience, embarrassment, and emotional distress Ex. A at ¶¶ 168-73. Plaintiffs have not alleged any physical injuries. *Id.*

Although Count IV is titled "intentional tort, intentional removal from plane," again, it is not clear what theory of liability is being asserted. To the extent Plaintiffs intended to plead

intentional infliction of emotional distress, the claim fails because Plaintiffs have not alleged adequate facts to establish a viable claim. "To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. " *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," and "must be intended only to cause extreme emotional distress to the victim. " *Id.* Further, because no physical injury is involved, Plaintiffs must establish that "the emotional distress or mental injury was medically diagnosed and of sufficient severity as to be medically significant." *Van Eaton*, 764 S.W.2d at 676.

Here, Count IV fails as a matter of law because Plaintiffs have not alleged facts that can be construed as fulfilling the intent requirement. Ex. A at ¶¶ 168-73. Plaintiffs' merely conclude that Hallmark's conduct was outrageous because Hallmark allegedly acted with evil motive or reckless indifference. *Id.* ¶ 173. However, intentional infliction of emotional distress requires more than mere outrageous conduct, it requires conduct that is atrocious, utterly intolerable, and intended only to cause extreme emotional distress. Plaintiffs do not assert any facts to support this high standard; indeed, as discussed above, Plaintiffs admit in their Amended Complaint that Hallmark had a rational reason for its actions. *Id.* at ¶ 61. Further, Plaintiffs have not alleged that they suffered severe emotional distress that resulted in bodily harm; and they have not alleged that their emotional distress was medically diagnosed and of sufficient severity as to be medically significant. *See Id.* at ¶¶ 140-44. Instead, Plaintiffs have simply alleged that Syed and Branch suffered "garden variety emotional damages." *Id.* at ¶ 143.

Therefore, this Court should dismiss Plaintiffs' "intentional tort, intentional removal from

plane" claim in Count IV of their Amended Complaint because it fails to state a claim upon which relief can be granted.

D.     **This Court should strike Count I of Plaintiffs' Amended Complaint because it contains no facts or allegations and is immaterial.**

Under Count I of their Amended Complaint, Plaintiffs have simply alleged "negligence, intentionally omitted," and have asserted no other facts or allegations. Ex. A at 18. "It has always been understood that the district court enjoys liberal discretion" to strike a party's pleadings under Rule 12. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). Rule 12(f) permits courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Count I contains no facts or information and as such, is immaterial. Therefore, this Court should strike Count I from Plaintiffs' Amended Complaint.

E.     **This Court should strike Plaintiffs' punitive damages allegations because they are insufficiently pleaded and immaterial to this case.**

According to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). This Court should strike Plaintiffs' punitive damages allegations because they are insufficiently pleaded and immaterial to this case.

"To state a claim for punitive damages, the pleadings must allege facts indicating the defendant maliciously, willfully, intentionally, or recklessly injured the plaintiff by his tortious act. " *Rock Port Mkt., Inc., v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 187 (Mo. Ct. App. 2017). "In a negligence case, punitive damages are awardable only if, at the time of the negligent act, the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury." *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 338 (Mo. 1996).    "Punitive damages cannot be collected unless the defendant showed complete indifference to or conscious disregard for the safety of others. " *Id.*

13

Here, Plaintiffs seek punitive damages for both their negligence and intentional tort claims. Ex. A at ¶¶ 146-48. However, as discussed above, Plaintiffs have not adequately pled that Hallmark acted maliciously, willfully, or with complete indifference or conscious disregard for Plaintiffs' safety. Instead, Plaintiffs acknowledge that Hallmark had a rational basis for reassigning Plaintiffs' reserved seats, because the aircraft lacked enough oxygen masks to permit Syed and Branch to sit next to each other with two infants seated on their laps. *Id.* at ¶¶ 60-61. Further, Plaintiffs made several attempts to bypass their revised seating assignments and were only removed from the plane after they finally refused to comply. *Id.* at ¶¶ 46-47, 63-64, 69-70. When Plaintiffs demanded to know why they had been removed from the plane, it was explained to them by Hallmark's employees that Plaintiffs were making the flight attendants and other passengers uncomfortable. *Id.* at ¶¶ 88, 90. These allegations, even taken as true, simply do not rise to the level of intentional or reckless disregard for Plaintiffs' rights or safety.

Therefore, this Court should strike Plaintiffs' punitive damages allegations.

### III.   CONCLUSION

This Court should dismiss Plaintiffs' Amended Complaint in its entirety because all of Plaintiffs' claims against Hallmark, including their claims for punitive damages, are preempted by the Airline Deregulation Act. In the alternative: Counts II through IV of Plaintiffs' Amended Complaint should be dismissed because they fail to state claims upon which relief can be granted; and Count I of the Amended Complaint and Plaintiffs' punitive damages allegations should be stricken because they are insufficiently pleaded and immaterial to this case.

WHEREFORE, Defendant HALLMARK AVIATION SERVICES, L.P. prays that this Honorable Court enter an order dismissing Counts I through V of Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), striking Plaintiffs' punitive damages allegations pursuant to

14

Fed. R. Civ. P. 12(f)(2), and for such further relief as this Court deems necessary and proper.

          Respectfully Submitted,

          HEPLERBROOM LLC

          By:   */s/Michael Reda*
          MICHAEL REDA                # 33591MO
          mreda@heplerbroom.com
          211 North Broadway, Suite 2700
          St. Louis, MO  63102
          314/241-6160 / 314/241-6116 – Facsimile
          Attorney for Defendant Hallmark Aviation
          Services, L.P.

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed on this 20th day of MARCH, 2020, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Bevis Schock
7777 Bonhomme Ave.
St. Louis, MO 63105
wbschock@schocklaw.com
      Attorneys for Plaintiffs

David Berwin
211 N. Broadway, 2500
St. Louis, MO 63102
dberwin@evans-dixon.com
      Attorneys for Frontier Airlines

I hereby certify that the foregoing document has been electronically mailed to the following on this 20th day of MARCH, 2020:

W. Bevis Schock
7777 Bonhomme Ave.
St. Louis, MO 63105
wbschock@schocklaw.com
      Attorneys for Plaintiffs

Thatcher Stone
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
T: 855-275-7378 / F: 646-873-7529
thatcher@stoneandwoodrowlaw.com
    Attorney for Plaintiff

William Woodrow
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
T: 855-275-7378/ F: 646-873-7529
will@stoneandwoodrowlaw.com
    Attorney for Plaintiff

David Berwin
211 N Broadway- Suite 2500
St. Louis, MO 63102
T: (314) 552-4046 / F:314-884-4446
dberwin@evans-dixon.com
    Attorney for Frontier Airlines, Inc.

Tara Shelke
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603
T: 312-422-5713
tshelke@amm-law.com
    Attorney for Frontier Airlines, Inc.

Brian Maye
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603
T: 312-422-5713
bmaye@amm-law.com
    Attorney for Frontier Airlines, Inc.


                    */s/ Michael Reda*