UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASHFAQ HUSSAIN SYED, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.:   4:20-CV-00407-AGF |
| ) | |
| FRONTIER AIR LINES, INC., *et al.* ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT HALLMARK AVIATION SERVICES, L.P.'S
MOTION TO DISMISS AND STRIKE**

Come now Plaintiffs and state for their Memorandum in Opposition to Defendant Hallmark Aviation Service, L.P.'s March 20, 2020 Motion to Dismiss and Strike, Doc.# 10.

**PARTIES**

Plaintiffs are a single family. Defendant Frontier Air Lines, Inc. is a Nevada Corporation and Defendant Hallmark Aviation Services, L.P., is a California limited partnership whose partners are citizens of Australia and Virginia, Doc. # 1.

**ABBREVIATED FACTUAL SUMMARY**

Plaintiffs booked airline tickets on Frontier for a family trip to Las Vegas. Defendant Hallmark is Frontier's contract gate agent in St. Louis. When Plaintiffs arrived at the airport they were treated rudely by one of Hallmark's employees. Plaintiffs boarded their flight, only to be removed, without cause, from the plane, by the same rude employee. In the course of returning to the terminal they were locked in the hot jetway by this same employee. Upon leaving the airport, they were threatened that they would receive the same treatment if they dared to return for travel on the following day.

## ABBREVIATED PROCEDURAL HISTORY

Plaintiff filed a Petition in St. Louis County Circuit Court against Frontier Airlines, believing the person who engaged in the disputed conduct was a Frontier employee, 19SL-CC02229.  Frontier removed based on diversity, 4:19-CV-02125-AGF.  On August 22, 2019 this court found the damages to be less than $75,000.00 and remanded, Doc. # 16.  On September 20, 2019 Frontier, back in state court, filed its Answer and Motion to Dismiss.  On October 31, 2019 the state court denied that Motion.  On January 28, 2020 Plaintiff filed a First Amended Petition, Doc. # 6, (incorrectly titled by undersigned counsel as "Petition for Damages"; should be titled "First Amended Petition for Damages"), which added Hallmark, Frontier's contract gate agent in St. Louis as a Defendant, because Hallmark employs the person who engaged in the disputed conduct.  On March 18, 2020 Hallmark removed, Doc. # 1.  On March 20, 2020 Hallmark filed the Motion to Dismiss at issue here, Doc. # 8, and this is Plaintiffs' Opposition to that Motion.

## CLAIMS IN FIRST AMENDED PETITION

In their First Amended Petition, Plaintiffs make the following claims:

    Count I:    Intentionally omitted.
    Count II:    Negligence Per Se.  Defendant's conduct violated the TICKETS Act, which requires transport by airlines for those with tickets, by failing to provide Plaintiffs transportation to Las Vegas (providing the basis for a common law action although the TICKETS Act became law after these events).
    Count III:    Negligence - Manner of Removal of Plaintiffs from Plane.  Defendant was negligent in its manner of removing Plaintiffs from the plane, locking them in the jetway, threatening them afterwards, and defaming them to third parties.
    Count IV:    Intentional Tort.  In the alternative Defendant's conduct was lawful, but outrageous due to Defendant's evil motive or reckless indifference to the safety and rights of Plaintiffs.
    Count V:    False Imprisonment in Jetway.  Defendants falsely imprisoned Plaintiffs in the jetway.
    Count VI:    Breach of Contract.  Defendant breached its contract to transport Plaintiffs to Las Vegas.

## ARGUMENTS IN HALLMARK'S MOTION

Hallmark argues that:

| | | |
|---|---|---|
| 1. | All Counts: | The Airline Deregulation Act preempts this suit, |
| 2. | Count II: | The TICKETS Act was not yet in effect, |
| 3. | Count III: | The Count does not present a viable legal theory, |
| 4. | Count IV: | The Count does not present a viable legal theory, |
| 5. | Count I: | The Count is immaterial (with which Plaintiff agrees because it is intentionally omitted). |
| 6. | Punitive Damages: | Punitive damages are "insufficiently pleaded and immaterial" |

## LEGAL STANDARD

In *Liscomb v. Boyce*, WL 1649642, at *2 (8th Cir. Apr. 3, 2020) the court stated the standard for review of a Motion to Dismiss:

> In reviewing an appeal from a grant of a motion to dismiss, we construe the complaint in the light most favorable to the nonmoving party." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715–16 (8th Cir. 2011) (internal quotation omitted). To avoid dismissal, the complaint must contain facts that, if "accepted as true, ... state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted). This "standard asks for more than a sheer possibility that a defendant has acted unlawfully, or more than a mere possibility of misconduct." *Id.* (cleaned up).

### I.   PREEMPTION

The first branch of defendant Hallmark's 12 (b)(6) motion to dismiss is on the grounds of preemption under the Airline De-Regulation Act, 49 U.S.C. Sec. 41713(b)(1) (the "ADA").

> [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of an air carrier* that may provide air transportation under this subpart. (Emphasis added)

In *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 (5th Cir. 2002) the court interpreted that statute:  "ADA preemption is 'concerned solely with economic deregulation, not with displacing state tort law.'"  See also, *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995).

3

Hallmark's preemption argument fails on four independent grounds: First, the motion fails to tell which of the three kinds of preemption potentially applicable, express, field, or conflict preemption, *Hillsborough County, Fla. v. Automated Medical Lab., Inc.,* 471 U.S. 707, 713 (1985), applies, therefore leaving both Plaintiffs and the court guessing as to the appropriate response. Second, *Watson v. Air Methods*, 870 F.3d 812 (8th Cir. *en banc* 2017) rejects preemption for private tort claims when such claims are unrelated to price, route or service. Third, defendants cite in their behalf *Lyn-Lea Travel Corp. v. American Airlines Inc*, 283 F. 3d 282, (5th Cir. 2002), a challenge to reduction in commissions by travel agents, but that case supports Plaintiffs because it finds fraudulent inducement defense, a state law claim, not entitled to preemption. Fourth, in order to take advantage of the preemption provisions Hallmark needed to prove it is a U.S. citizen, which it has not done, *and* an air carrier, which it also has not done.

### 1.     Three kinds of preemption.

In *Hillsborough County, Fla. v. Automated Medical Lab., Inc.,* 471 U.S. 707, 713 (1985), Justice Marshall stated that there are three kinds of federal preemption: express, field, or conflict. In its Motion Hallmark fails to clarify which of the three applies, leaving Plaintiffs and the court unable to adequately respond.

### 2.     Watson

In *Watson v. Air Methods*, 870 F.3d 812 (8th Cir. *en banc* 2017) plaintiff brought a state law whistleblower claim stating that pilots were using cell phones in flight, etc. After reviewing the leading cases the Eighth Circuit held personal state law claims which do not affect airline rates, routes or services were not preempted by the ADA. It seems straightforward that Plaintiff's claims here do not affect "rates" or "routes". That leaves "services". Plaintiffs were ejected from the aircraft. That is not a "service" they paid for. The following quote is dispositive:

4

To be sure, the ADA pre-empts some state laws that have an "indirect" effect on air-carrier services, but this does not mean that the strength or immediacy of the effect is irrelevant. At some point, the effect of a state action on a service is both indirect *and* too remote or insignificant to warrant pre-emption. (Citations omitted).

*Watson* at 818.

### 3.     Leading Cases

Hallmark cites *Lyn-Lea Travel Corp. v. American Airlines Inc*, 283 F. 3d 282, (5th Cir. 2002). That case, however, supports Plaintiffs, because, as stated above, it found not preempted a state law fraudulent inducement claim.[1]

Since the Supreme Court's decisions in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374(1992), *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) and the Ninth Circuit's decision in *Charas v. Trans World Airlines, Inc.*, 160 F. 3d 1259 (9th Cir.1998) it has been established that preemption does not apply to ordinary negligence and tort claims, or contractual claims that an airline had independently assumed, because in each case those claims affect neither prices, routes nor services of an air carrier. A few cases have held where the plaintiffs seek to impose negligence for customary service of an airline like ticketing and boarding, or rules of air navigation and safety, those are preempted. See, *Abdullah v American Airlines, Inc.*, 181 F. 3d 363 (3rd Cir. 1999), an injury from turbulence case which related to safety. But Plaintiffs' claims have nothing to do with safety. Hallmark's cases in Part II. B. 2 of its Motion do not identify a claim by a plaintiff that relates to air safety or a service they paid for as contemplated by *Abdullah*. Plaintiff's claims are thus not preempted.

As Judge Wilkinson of the 4th Circuit accurately noted:

> We agree with Smith that, to the extent his claims are based on conduct distinct
> from Comair's determination not to grant permission to board, his false

---

[1] Defendant cites this case to argue it may rely on the ADA even though it is not an air carrier. Why it's so entitled when Plaintiffs' claims do not affect an air carrier's price, route or service is not stated by Defendant . Thus indirect reliance on the ADA by Defendant fails.

5

imprisonment and intentional infliction of emotional distress claims are not preempted. Suits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services. *Rombom,* 867 F.Supp. at 222, 224. If, for example, an airline held a passenger without a safety or security justification, a claim based on such actions would not relate to any legitimate service and would not be preempted. *See Chrissafis v. Continental Airlines, Inc.,* 940 F.Supp. 1292, 1298–99 (N.D.Ill.1996) (distinguishing false imprisonment claims held preempted because based on airline's refusal to transport and claims held not preempted because based on airline causing arrest without proper factual basis).

*Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998)

### 4. "Citizen" and "Air Carrier"

In order for Hallmark to take advantage of ADA preemption under the statute it must be an "air carrier" or entitled to indirect status. "Air Carrier" is defined at 49 U.S.C. 40102(a)(2) as a "citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation".

"Citizen" is defined at 49 U.S .C. 40102(a)(15), listing requirements for shareholders, directors, senior management and control in order to qualify as a citizen. Hallmark has failed to submit evidence to prove citizenship, which it could have under E.D.Mo. L.R. 7-4.01(A).

Plaintiff suggests non-airline gate agents don't provide air transportation services, even indirectly, when they eject passengers from an aircraft. That is not a service they pay for.

The cases affirming preemption are driven by the impact of their plaintiffs' claims against a route, price or service of an air carrier. There is no such effect here and Hallmark has not shown it. Plaintiffs here are suing over their outrageous treatment independent from and without linkage to a price, route or service. Being ejected was not a service.

For the foregoing reasons, defendant Hallmark's motion to dismiss for preemption fails.

## II.     COUNT II, TICKETS ACT

The statute at issue in Count II is the 'Transparency Improvements and Compensation to Keep Every Ticketholder Safe Act of 2018' or the 'TICKETS Act,' which states in relevant part:

> Beginning on the date of enactment of this Act, a covered air carrier may not deny a revenue passenger traveling on a confirmed reservation permission to board, or involuntarily remove that passenger from the aircraft, once a revenue passenger has—
>
> (1) checked in for the flight prior to the check-in deadline; and
>
> (2) had their ticket or boarding pass collected or electronically scanned and accepted by the gate agent.
>
> 3562P, SEC. 425. TICKETS ACT., Av. L. Rep. P 3562P

Plaintiffs are not claiming that the Act creates a private right of action, which would indeed be retrospective and so unlawful. Plaintiffs are claiming that under Missouri law violation of a statute is negligence per se because the statute sets the standard of care. See *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 498 (Mo. Ct. App. 2018):

> The violation of a statute, which is shown to be the proximate cause of the injury, is negligence per se. *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. App. E.D. 2012). Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person should be and the court adopts that statutory standard of care to define the standard of conduct of a reasonable person. *Id.* When a case based on negligence per se is submitted to the jury, the standard of care is omitted because the statutory violation itself constitutes a breach of the standard of care. *Id.* To establish a claim of negligence per se, the plaintiff must plead and prove the following four elements: (1) the defendant violated a statute; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) the injury complained of was of the kind the statute was designed to prevent; and (4) the violation of the statute was the proximate cause of the injury. *Id.* at 84-85.

Negligence per se only depends upon a statute to define the standard of conduct of a reasonable person. The claim sounds in common law – it uses the statute only to satisfy the duty and breach prongs in a common law negligence analysis. It remains to the Plaintiff to establish causation and damages. See also, *Elder v. Allstate Ins. Co.*, 341 F.Supp.2d 1095, 1100 (D.Minn.

7

2004) (citing *Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn. 1993) (The negligence per se doctrine does not create new causes of action. Rather, where an underlying common law cause of action exists, a statutory enactment could establish a standard of care in a negligence action.)  (Internal quotations omitted).

A standard of care is what the legislature says it is.  The lack of retroactivity does not change the fact that the Congress has set the standard of care.

"A law is retrospective in operation if it impairs vested rights or imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 769 (Mo. banc 2007).  "Procedural statutes that do not affect the rights or duties giving rise to the cause of action but instead provide the method for enforcing rights may be applied retrospectively without violating the ban on retrospective laws." *Id.*

Plaintiffs' Count II claim survives this aspect of Hallmark's attack for two reasons:  First, the Tickets Act does not affect the substantive rights of the passenger or the duty of the airline – the passenger already has the contractual right to carriage if he is checked in on time and has had his boarding pass scanned.  Second, the Tickets Act makes no greater demand on the airline than that which the contract requires, and it grants the passenger no private right of action against the airline.  Instead the TICKETS Act merely provides the government a method for enforcing the pre-existing rights and duties on behalf of the passengers.  As such, it is procedural and does not violate the ban on retrospective laws.

### III.     COUNT III, NEGLIGENCE IN MANNER OF REMOVAL FROM PLANE

"A legal duty owed by one party to another may arise because the law imposes a duty, (1) based upon a special relationship between the parties; or (2) under a particular set of circumstances where a party must exercise due care to avoid a foreseeable injury to another."

8

*Spencer v. American Airlines, Inc*., 553 S.W.3d 861, 867 (Mo.App. E.D., 2018). The touchstone for duty under principles of general negligence law is foreseeability. *Lopez v. Three Rivers Elec. Co-op., Inc.,* 26 S.W.3d 151, 155–56 (Mo. 2000) ( "In the absence of a particular relationship recognized by law to create a duty, the concept of foreseeability is paramount in determining whether a duty exists.").

Missouri courts impose a heightened standard of care on common carriers for the care and wellbeing of their passengers. *Boyette v. Trans World Airlines, Inc.*, 954 S.W.2d 350, 354 (Mo.App. E.D.,1997) (citing *Collier v. Bi–State Dev. Agency*, 700 S.W.2d 479, 480 (Mo.App. E.D.1985)) ("A common carrier has a duty to exercise the highest degree of care to safely transport its passengers and protect them while in transit."); see also *Spencer v. American Airlines, Inc*., 553 S.W.3d 861, 866–67 (Mo.App. E.D., 2018). A contract may not, as a matter of public policy, be written in such a way to shield a defendant from his acts of negligence. *Randolph v. American Airlines, Inc.*, 144 N.E.2d 878, 880, 103 Ohio App. 172, 174 (Ohio App. 1956) ("There is a general rule of law that common carriers cannot stipulate for immunity from their own or their agent's negligence."); see also *Read v. St. Louis, K.C. & N.R. Co*., 60 Mo. 199, 205, 1875 WL 7768, at *4 (Mo. 1875).

## Elements of Negligence Claim

In *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) the court stated the well-established Missouri law elements of a negligence claim:

> To state a claim for negligence, a plaintiff must allege, (1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks; (2) breach of the duty; (3) proximate causation; and (4) actual damages. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985).

Plaintiff has alleged those elements at 164*&c* of the First Amended Petition, Doc. # 6.

**Foreseeability**

The Court explains in *Adams v. Certain Underwriters at Lloyd's of London*:

Under the principle of general negligence law, whether a duty exists in a given situation depends upon whether the risk was foreseeable. *Id.* at 156. "The duty owed is generally measured by whether or not a reasonably prudent person would have anticipated danger and provided against it." *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. En Banc 1990).

589 S.W.3d 15, 33 (Mo. Ct. App. 2019).

Plaintiffs' allegation of foreseeability appears in Count III of their Petition at ¶165.[2] The outrageous treatment the Plaintiffs received at the hands of Hallmark's employee was foreseeable. In the airline industry gate agents are given great power to identify and eliminate potential threats to the safety of the flight. They are given discretion to eject passengers from flights for vaguely defined reasons, such as "failing to follow directions" and "unruly behavior." It is an unfortunate reality that gate agents or flight attendants do, at times, misuse these "policing" powers to abuse unlucky passengers who catch them on a bad day or somehow rub them the wrong way. This behavior goes unchecked and unpunished because the airline, never wanting to admit liability to the complaining passenger, is willing to uncritically back its agent's embellished or fabricated version of events. It is axiomatic of human nature that unchecked authority is subject to abuse. Passenger abuse is foreseeable, it happens with regularity, and if what Plaintiffs have pled is true, then Hallmark clearly has not done enough to address the risk.

**Actual Damages**

In *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 853 (Mo. Ct. App. 2015) the Court stated:

---

[2] ¶165 states: It was reasonably foreseeable that Defendants and their agents' and employees improper treatment of the Plaintiffs in the manner in which they were removed from the plane would result in aggravation, inconvenience, distress, and would deprive them of their family trip.

10

> On appeal, as in its motion to dismiss, Respondent only asserts that Appellants did not adequately plead actual damages.  This argument must fail…Appellants need not quantify the exact amount of their damages in their amended petition in order to survive a motion to dismiss…Appellants pleaded that the freezing of the accounts prevented them from making stock trades they attempted to make.  The specific nature of these trades and any financial loss caused by the inability to make them must be investigated in the discovery portion of the lawsuit.  This is also true of the disclosure's effect on the settlement value of the underlying lawsuit; discovery is required to determine the extent of the damages. In each instance, the allegation of harm, along with the other elements of the cause of action which are not contested, is sufficient to survive a motion to dismiss.  We treat the facts alleged in the petition as true and construe them liberally in favor of the plaintiffs.  The amended petition has stated a claim, because if Appellants prove the facts it sets forth, they would be entitled to relief.  (Citation omitted).

While it is true that Plaintiffs experienced fear, which alone would not support the claim because in an emotional distress case the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant," *Jarrett v. Jones,* 258 S.W.3d 442, 448 (Mo. banc 2008), *Biersmith v. Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 88 (Mo. Ct. App. 2011) Plaintiff has alleged other damages including humiliation, disgrace, stress, outrage, loss of liberty at ¶144, heat exposure, at ¶178, migraine headache, at ¶107, physical discomfort to the infant children leading to screaming, at ¶99, loss of the trip, at ¶143, and being subject to libelous falsehoods to Plaintiff Shelly Branch's mother, who was until then an uninvolved third party, at ¶135.  Those damages support the claim.

## IV.    COUNT IV:  INTENTIONAL TORT

The elements of prima facie tort are (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act.  *LPP Mortg., Ltd. v. Marcin, Inc.*, 224 S.W.3d 50, 53–54 (Mo.App. W.D.,2007) (citing *Nazeri v. Mo. Valley Coll.,* 860 S.W.2d 303, 315 (Mo. En Banc 1993)).  Once these threshold criteria are established, the court applies a "balancing of interests" test which includes four components:  "(T)he nature and seriousness of the harm; the

11

interests promoted by the actor's conduct; the character of the means used; and the motive of the actor." *Kiphart v. Cmty. Fed. Sav. & Loan Ass'n*, 729 S.W.2d 510, 516 (Mo. Ct. App. 1987).

The "balancing of interests test has been otherwise explained as:

> "(1) the physical harm to person or property is weighed more heavily than emotional harm or harm to prospective pecuniary interest, (2) established privileges or rights of the actor are to be afforded proper weight, (3) conduct which offends societal concepts of fairness and morality favor liability, and (4) the degree of malice motivating the actor may be so overwhelming as to tip the scales in favor of liability."

*Dowd v. General Motors Acceptance Corp.*, 685 S.W.2d 868, 873 (Mo.App. W.D. 1984).

The final component that courts require is that the Plaintiff's claim does not otherwise fall within a well-defined nominated tort action. *Id.* at 872. *See also Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App. 1980), *Billingsley v. Farmers All. Mut. Ins. Co.*, 555 S.W.3d 1, 6–7 (Mo. Ct. App. 2018), with Plaintiff noting that some of those cases are recent, thus endorsing the theory that an intentional tort is a viable cause of action in Missouri at the present time.

Plaintiffs have alleged the requirements of an intentional tort.[3] The incident was a breach of contract but it was lawful. Plaintiffs believe and have pled that Hallmark's employee kicked them off of the plane out of a purely malicious intent to injure. (Petition, ¶169). Plaintiffs were

---

[3] Plaintiffs' Count IV reads:
168. Plaintiffs incorporate all prior paragraphs.
169. Defendants, through their authorized representatives, intentionally removed Plaintiffs from the plane.
170. At the time there was no statute, law or regulation specifically making unlawful the removal of Plaintiffs from the plane.
171. The removal of Plaintiffs from the plane caused Plaintiffs damages as outlined above.
172. There was no justification and/or there was insufficient justification for Defendants' removal of Plaintiffs from the plane. *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App. 1980), *Billingsley v. Farmers All. Mut. Ins. Co.*, 555 S.W.3d 1, 6–7 (Mo. Ct. App. 2018).
173. Defendants' conduct, through their authorized representatives, was outrageous because of Defendants' evil motive or reckless indifference to the safety and rights of others. MAI 10.01

injured in multiple ways as described *supra* and in Plaintiffs' Petition, see above. Any justifications offered by Hallmark for its employee's actions are fabrications and Plaintiffs have pled their falsity. (Petition, ¶172). There was emotional and pecuniary harm, but there was physical harm as well: the heat exposure and stress of the incident was so great that the babies were screaming and Plaintiff Branch suffered a migraine headache, a crippling condition, for which she has medically-diagnosed susceptibility. Hallmark has the right to deny carriage under certain conditions, but in this instance Plaintiffs have pled that those conditions were not met. Hallmark's conduct, as pled by the Plaintiffs, was extremely offensive to societal concepts of fairness and morality. The malice of Hallmark's agent was shocking: this was a family traveling with infant twins. Most decent people go out of their way to *assist* people traveling with infants. But Hallmark's employee kicked them and their babies off the plane for no explained reason whatsoever. Then she either purposely closed the door to the jetway, locking the plaintiffs inside or she intentionally allowed the door to close, knowing that it would lock itself to the outside. Then, she threatened the Plaintiffs as they were leaving and told them they would get the same treatment if they "came back tomorrow"!

    Finally, the missing "nominated tort" requirement is inapplicable because Plaintiffs are pleading prima facie tort in the alternative to their other claims.[4] In this case, false imprisonment is being pled in the alternative because it contemplates an unlawful act as the genesis of the claim. If Plaintiffs cannot meet a requisite requirement of proof for the very specific tort of false imprisonment, then all of the harm and outrageous treatment that they experienced flowed from

---

[4] *Porter v. Crawford & Co.,* 611 S.W.2d 265, 270 (Mo.App. 1980) ("An early limitation that the doctrine would not support a cause of action if the facts would also support a nominative tort has been largely dispelled by the analysis which suggests that under modern pleading, alternative and even contradictory theories may be pleaded.")

13

the malicious (yet lawful) decision to kick them off the plane. Similarly, negligence is being pled in the alternative because it is an unintentional tort.

Plaintiffs have properly pled the claim of prima facie tort and it should not be dismissed.

### V.    COUNT I

*Count I is intentionally omitted from the First Amended Petition, so there is nothing to dismiss.*

### VI    PUNITIVE DAMAGES

Hallmark moves to strike Plaintiff's claims for punitive damages, but Hallmark characterizes too narrowly the standard for punitive damages in Missouri. The focus of the test is not the severity of the physical danger caused by the defendant: punitive damages are awarded as punishment for malicious conduct that is intended to serve as a deterrent to others. As early as 1966, the Missouri supreme court stated: "[p]unitive damages are awarded for the purpose of inflicting punishment for wrongdoing, and as an example and deterrent to similar conduct." *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 722 (Mo.1966)

In fact, "it is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award." *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo.,1989). "(P)unitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences." *Id.*

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Id.*

Contrary to Hallmark's assertion, Plaintiffs have pled facts, which if true, do establish outrageous and malicious conduct on the part of Hallmark's employee. She viciously removed

14

them from the plane for no cause whatsoever – she fabricated the reasons out of whole cloth. She locked them in a sweltering hot jet bridge just to add another malicious stab to the misery she was inflicting. Then she threatened that she would do the same thing to them "tomorrow" if they dared to show up again. This lady was unhinged: the Plaintiffs have no idea what motivated such malicious rage. The one thing that the Plaintiffs do know – and is clearly pled in the Plaintiffs' Petition – is that the actions of Hallmark's employee towards them were wholly unwarranted, they were outrageous, and they were purely malicious – the epitome of "evil motive."

These are the facts as the Plaintiffs experienced them and as the Petition has pled them. These facts – taken as true for purposes of this motion – establish grounds by which a jury could award punitive damages and the Court should not strike Plaintiffs' demand. As stated at the beginning of this memorandum regarding the standard for dismissal of punitive damages on a Motion to Strike: in *State ex rel. Smith v. Greene*, 494 S.W.2d 55, 60 (Mo. 1973) the court said:

> All this opinion holds is that relator has properly pleaded a cause of action and prayer for damages which survives. He must still prove his allegations. In the vast majority of cases nothing close to the standard necessary to recover punitive damages will be met. If it has not been met, the trial court has the power, and the duty, to strike that portion of the petition, but only after plaintiff has had the opportunity to meet his burden of proof and has failed, if so.

Plaintiff has properly pled punitive damages and the court should not dismiss punitive damages on a Motion to Dismiss.

### PRAYER

WHEREFORE, Plaintiffs pray this court deny Defendant's Motion to Dismiss and to Strike.

        Respectfully Submitted,

        __/s/ W. Bevis Schock__ .
W. Bevis Schock, 32551MO
Attorney for Plaintiffs
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:   314-721-1698
Voice: 314-726-2322

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2020 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

All counsel of record

__/s/ W. Bevis Schock__ .
W. Bevis Schock, 32551MO