**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ASHFAQ HUSSAIN SYED, SHELLY RENEE )
BRANCH, A.M.S., by Next Friend Ashfaq )
Hussain Syed, and N.G.S., by Next Friend )
Ashfaq Hussain Syed, )
                                            )         Case No. 4:20-cv-00407-AGF
       Plaintiffs, )
                                            )
v. )
                                            )
FRONTIER AIR LINES, INC.; HALLMARK )
AVIATION SERVICES, L.P. )
                                            )
       Defendants. )
                                            )

**HALLMARK AVIATION SERVICES, L.P.'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND MOTION TO STRIKE; MEMORANDUM IN
SUPPORT**

### I.  INTRODUCTION

In their Opposition to Defendant Hallmark Aviation Services, L.P.'s ("Hallmark"), Motion

to Dismiss and Motion to Strike, Plaintiffs Ashfaq Hussain Syed ("Syed"), Shelly Renee Branch

("Branch"), A.M.S., by Next Friend Ashfaq Hussain Syed, and N.G.S., by Next Friend Ashfaq

Hussain Syed (collectively "Plaintiffs"), have failed to provide this Court with any meaningful

rebuttal to Hallmark's Motion.  Most significantly, Plaintiffs have not, and cannot, refute that the

Airline Deregulation Act ("ADA") preempts their state law tort claims against Hallmark, an agent

of Frontier Air Lines.  The conduct alleged in Plaintiffs' Amended Complaint regarding ticketing

and boarding is the exact type of conduct that qualifies as a "service" by an air carrier that is

expressly preempted by the ADA.  Plaintiffs' attempts to argue otherwise are unavailing.

Alternatively, Plaintiffs' state law tort claims are insufficiently pled as a matter of law and must be dismissed.  Contrary to Plaintiffs' creative reasoning, the TICKETS Act was not in effect at the time of the subject incident, and thus cannot provide the basis for a negligence *per se* claim in this lawsuit.  Plaintiffs' other negligence and intentional tort claims fail because Plaintiffs have not sufficiently pled the necessary elements.  Rather, they allege nothing more than an interaction with a "rude" employee that resulted in annoyance and some discomfort, which is not actionable as a matter of law.  Plaintiffs' request for punitive damages fails for the same reason and must be stricken.

## II.  ARGUMENT

### A.    THE WEIGHT OF AUTHORITY ESTABLISHES THAT PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE ADA.

#### 1.    All of Plaintiffs' claims against Hallmark relate to the "services" of an air carrier.

Plaintiffs' assertion that their claims are not related to a "service of an air carrier," and therefore fall outside the purview of the ADA's express preemption clause, is unavailing.  49 U.S.C. § 41713(b)(1); *see* Plaintiffs' Opposition, Doc. 19 ("Pls. Opp.") at p. 3-6.  In support of their argument, Plaintiffs claim that being ejected "is not a service they paid for," as if being a dissatisfied customer is dispositive of the matter.  *See* Pls. Opp. at p. 4.  However, in the Eighth Circuit and other jurisdictions, it is well established that claims arising out of ticketing and boarding procedures are directly and significantly related to the services of an air carrier and are therefore preempted by the ADA.  *See, e.g., Watson v. Air Methods Corp.*, 870 F.3d 812, 818 (8th Cir. 2017).

In an attempt to avoid the weight of authority against them, Plaintiffs have misapplied the holding in *Watson*, where the Eighth Circuit found that a Missouri wrongful discharge claim was not related to an air carrier's service.  *See* Pls. Opp. at p. 4.  Indeed, in *Watson*, the Eighth Circuit

adopted a broad meaning of "service," which includes "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Watson*, 870 F.3d at 817 (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995). That the Court in *Watson* ultimately held that the claim at issue was not preempted is of no relevance to this litigation, as the instant case does not involve a wrongful discharge claim.

Numerous jurisdictions, applying the same broad definition as the *Watson* court, have held that where an airline denied boarding, or removed a passenger from an aircraft—as is alleged to have occurred here—the ensuing claims related to "services" and were preempted by the ADA. *See Cintron v. JetBlue Airways Corp.*, 324 F. Supp. 3d 248, 254 (D. Mass. 2018) (removal from aircraft); *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir.2010) (denied boarding); *Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 996 (E.D. Wis. 2004) (removal from aircraft); *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) (denied boarding); *see also Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 95 (1st Cir. 2013) ("Whether the airline is allowing a passenger onto the plane or preventing a passenger from boarding, that determination takes place during the company's ticketing, check-in and boarding procedures.").

In *Cintron*, for example, the plaintiff passenger sued the defendant airline for intentional infliction of emotional distress arising from her removal from the aircraft, and the airline moved to dismiss on ADA preemption grounds. 324 F. Supp. 3d at 250-51. The passenger, who suffered from hearing loss, alleged that she was mistreated by a flight attendant and removed from the aircraft after having taken her assigned seat in an exit row, because she expressed difficulty hearing the safety instructions and touched the flight attendant to get his attention. *Id.* at 250-51. In its preemption analysis, the District of Massachusetts noted that the First Circuit had adopted the Fifth Circuit's broad definition of the term "services," the same definition later adopted by the Eighth

Circuit. *Id.* at 253. The court explained that the passenger's removal from the plane was directly related to her interaction with the flight attendant regarding his instructions and therefore arose out of a boarding procedure, which fell under the definition of services, and ADA preemption applied. *Id.* at 254.

Plaintiffs' claims against Hallmark similarly arise out of their alleged wrongful removal from the aircraft and are directly related to their interactions with a gate agent and a flight attendant. *See* Plaintiffs' Amended Complaint, attached as Exhibit A ("Ex. A") at ¶¶ 36, 52, 58-60, 80-83. Plaintiffs allege they were assigned alternate seats by the gate agent and informed by a flight attendant that they could not sit together because of an issue with available oxygen masks. *Id.* at ¶¶ 36, 52, 58-60. As Plaintiffs put it in their Amended Complaint, there was a "rational reason" for the reassigned seats. *Id.* at ¶ 61. After their removal from the plane, it was explained to them that their actions "made the flight attendants and passengers uncomfortable." *Id.* at ¶ 90. Plaintiffs' removal from the plane was thus directly related to the airline's seating policies and stemmed from Plaintiffs' interactions with airline personnel. As such, under the broad definition of services, Plaintiffs' claims arise out of a "boarding procedure" and are preempted by the ADA.

Additionally, each aspect of Plaintiffs' alleged interactions with Hallmark relates to an airline's services – from the dispute at the check in counter, to the customer service calls, *see* Ex. A at ¶¶ 46, 102, 112, to the allegedly dissatisfying manner by which they were removed from the plane and escorted back to the airport to retrieve their luggage. *See Id.* at ¶¶ 80-111. In the Eighth Circuit, any claims arising from those transactions relate to an air carrier's services and are preempted by the ADA. *See Schmidt*, 2019 WL 952103, at *5. Accordingly, all of Plaintiffs' claims against Hallmark should be dismissed.

**2.      The ADA preempts Plaintiffs' state law negligence and tort claims.**

Plaintiffs erroneously assert that "it has been established that preemption does not apply to ordinary negligence and tort claims . . . because in each case those claims affect neither prices, routes nor services of an air carrier." Pls. Opp. at p. 5. This statement is untrue and directly conflicts with well-established authority to the contrary. Hallmark cited a multitude of cases in its Motion to Dismiss, both within the Eighth Circuit and across other jurisdictions, that found state law negligence and tort claims to be preempted by the ADA. *See* Hallmark's Motion to Dismiss ("MTD"), Doc. 11 at p. 3, 5-6; *Schmidt*, 2019 WL 952103, at *5 (negligence); *Cintron*, 324 F. Supp. 3d at 254 (intentional tort); *Benedetto v. Delta Air Lines, Inc.*, 917 F. Supp. 2d 976, 982 (D. S.D. 2013) (negligence); *Al-Watan v. American Airlines, Inc.*, 658 F. Supp. 2d 816, 829-30 (E.D. Mich. 2009) (negligence and intentional tort); *Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292, 1300 (N.D. Ill. 1996) (intentional tort); *Williams v. Express Airlines I, Inc.*, 825 F. Supp. 831, 833 (W.D. Tenn. 1993) (intentional tort). Notably, Plaintiffs have made no attempt to distinguish or otherwise address any of the above cited cases.

**3.      The ADA applies to Hallmark.**

Equally unavailing is Plaintiffs' argument that their claims are not preempted because Hallmark is not an air carrier. *See* Pls. Opp. at p. 6. It is well-established that ADA preemption extends to claims brought against agents of air carriers performing the "services" covered by the ADA. *See* MTD, Doc. 11 at p. 4; *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002) ("ADA preemption is not limited to claims brought directly against air carriers."); *Marlow v. AMR Servs. Corp.*, 870 F. Supp. 295, 299 (D. Haw. 1994) (ADA applied to preempt suit against corporation that serviced and maintained jet bridges used at airports); *Huntleigh Corp. v. Louisiana State Bd. Of Private Sec. Examiners*, 906 F. Supp. 357, 362 (M.D.

La. 1995) (agent of air carrier with whom it had contracted to perform pre-departure security screening was within the reach of the ADA).  Once again, Plaintiffs have failed to distinguish these cases, and instead have chosen to argue simply that Hallmark is not an air carrier because ejecting passengers from an aircraft is not a service.  *See* Pls. Opp. at p. 6.  However, as discussed above, Hallmark has clearly established that Plaintiffs' claims against Hallmark are related to an air carrier's "service" under the ADA.

Further, Hallmark's citizenship is a non-issue in this case.  Plaintiffs acknowledge that Frontier is a citizen of the United States, and the ADA thus preempts claims relating to Frontier's prices, routes, or services.  *See* Ex. A at ¶ 9.  As Frontier's agent, the ADA also applies to Hallmark. In any event, several courts have held that the ADA's preemption clause applies to both domestic and foreign air carriers despite the definitions provided under 49 U.S.C. §§ 40102(a)(2) and (a)(15), which renders the question of citizenship altogether irrelevant.  *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 696, (9th Cir. 2011); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154, 164 (2nd Cir. 2012); *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 277 (E.D.N.Y. 2013).  As such, Plaintiffs' argument that Hallmark failed to establish its own citizenship is entirely irrelevant to the preemption issue.

### 4.    The ADA contains an express preemption clause.

Plaintiffs incorrectly argue that Hallmark has failed to clarify whether express, field, or conflict preemption applies in this instance – "leaving Plaintiffs and the court unable to adequately respond."  Pls. Opp. at p. 4.  However, in its Motion to Dismiss, Hallmark explicitly explained that "the ADA includes an express preemption clause."  MTD, Doc. 11 at p. 3.  As such, Plaintiffs' argument that preemption does not apply because Hallmark failed to state the proper type of preemption also fails.

**5.    Plaintiffs make no attempt to rebut Hallmark's argument that the ADA also preempts punitive damages.**

Finally, Plaintiffs do not attempt to rebut Hallmark's argument that Plaintiffs' request for punitive damages is preempted by the ADA.  Hallmark cited relevant case law that has gone entirely unaddressed by Plaintiffs.  *See* MTD, Doc. 11 at p. 7; *West v. Northwest Airlines, Inc.*, 995 F.2d 148, 152 (9th Cir. 1993) (holding ADA preempted claim for punitive damages under state and contract law stemming from an airline's refusal to allow the ticket holder to fly in an overbooked plane); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1423 n.8 (7th Cir. 1996) (holding claim for punitive damages preempted by ADA, since punitive damages claim represented an enlargement or enhancement of the bargain based on state laws or policies).  As such, Plaintiffs' request for punitive damages in relation to their claims against Hallmark is preempted and should be stricken.

For the foregoing reasons, this Court should dismiss all of Plaintiffs' claims against Hallmark and strike their claims for punitive damages as preempted by the ADA.

**B.    ALTERNATIVELY, PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST HALLMARK FOR NEGLIGENT OR INTENTIONAL TORT, AS A MATTER OF LAW.**

**1.    Plaintiffs' negligence *per se* claim fails because the TICKETS Act cannot be applied as a retroactive standard of care.**

Plaintiffs' argument that their negligence *per se* claim is properly based on the TICKETS Act of 2018, Pub. L. No. 115-254, § 425, 132 Stat. 338[1]—a statute not yet in effect at the time of the incident and with no retroactive application—is unavailing.  *See* Pls. Opp. at p. 7-8.

Both the United States Supreme Court and the Supreme Court of Missouri agree that a statute imposing new *duties* on a party with respect to past transactions cannot be applied

---

[1] The TICKETS Act was signed into law as part of the FAA Reauthorization Act of 2018 and became effective on October 5, 2018.  Pub. L. No. 115-254, 132 Stat. 3186.

retroactively absent clear congressional intent.  *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007).  As explained in Hallmark's Motion to Dismiss, the text of the TICKETS Act provides no indication that Congress intended it to be applied retroactively.  *See* MTD, Doc. 11 at p. 9; Pub. L. No. 115-254, § 425, 132 Stat. 3338.  Here, the subject incident is a past transaction with respect to the TICKETS Act, because it occurred in July 2018, nearly three months before the Act took effect in October 2018.  *See* Pub. L. No. 115-254, 132 Stat. 3186; Ex. A at ¶ 149.  As Plaintiffs have pointed out several times, they are relying on the TICKETS Act to define the "duty" and the "standard of care" on which they base their negligence *per se* claim.  Ex. A at ¶ 155; *see* Pls. Opp. at p. 7-8.  As such, Plaintiffs are clearly attempting to impose a new duty on Hallmark with respect to a past transaction.  Accordingly, the TICKETS Act cannot be applied in this case.

In their Opposition, Plaintiffs explain that "[t]o establish a claim of negligence *per se*, the plaintiff must plead and prove . . . (1) the defendant violated a statute . . . ."  Pls. Opp. at p. 7, quoting *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 498 (Mo. Ct. App. 2018).  In this instance, the TICKETS Act was not in effect at the time of the subject incident, cannot be applied retroactively, and therefore could not have been violated.  As such, Plaintiffs have failed to plead an essential element to their negligence *per se* claim, that Hallmark violated a statute, and Count II should be dismissed.

## 2.    Plaintiffs' negligence claim must also be dismissed because they have not alleged any actionable injury.

Under Count III, Plaintiffs alleged in their Amended Complaint to have suffered emotional distress from Hallmark's outrageous conduct.  Ex. A at ¶ 167.  However, they now concede that any emotional injuries they allegedly suffered do not support their claim for "failure to use highest degree of care, manner of removal from plane," because such injuries are not medically

diagnosable or of sufficient severity to be considered as medically significant.  *See* Pls. Opp. at p. 11.  The only injuries alleged to have been suffered are humiliation and disgrace, outrage, physical discomfort and migraines, heat exposure, screaming babies, etc.  *See Id.*  In Missouri, a claimant in negligence must establish "actual damages to the claimant's person or property."  *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prod., Inc.*, 700 S.W.2d 426, 431 (Mo. 1985).  Although this experience may have been annoying to Plaintiffs, the type of injuries that they have allegedly suffered, do not rise to the level of actual damages to their persons.  Further, although Plaintiff Branch allegedly developed a migraine at some point and the babies were allegedly screaming, Plaintiff Syed appears to have suffered nothing close to a physical injury, other than being "hot" at one point.  *See* Ex. A at ¶ 99.

As Plaintiffs point out at the outset of their Opposition, their claims against Hallmark arise from the alleged "rudeness" of one of Hallmark's employees.  *See* Pls. Opp. at p. 1.  However, being annoyed because of rudeness is not actionable under the law.  As such, Plaintiffs have failed to state a claim upon which relief can be granted and Count III should be dismissed.

**3.    Plaintiffs have failed to plead the essential elements of prima facie tort.**

Plaintiffs' claim against Hallmark for prima facie tort  (Count IV) fails to state a claim upon which relief can be granted, because Plaintiffs' have failed to properly plead three of the four necessary elements.  "In order to make out a submissible case of prima facie tort, a claimant must establish: (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act."  *LPP Mortg., Ltd. v. Marcin, Inc.*, 224 S.W.3d 50, 53-54 (Mo. Ct. App. 2007).  Here, Plaintiffs have not alleged that Hallmark intended to injure them, that they suffered injuries that are actionable under the law, or that Hallmark lacked a justification for their removal.  *See* Ex. A at ¶¶

168-173.

Plaintiffs argue that they sufficiently pled the second element of a prima facie tort, "intent to injure," in paragraph 169 of their Amended Complaint, which states: "[d]efendants, through their authorized representatives, intentionally removed Plaintiffs from the plane." *See* Pls. Opp. at p. 12; Ex. A at ¶ 169. However, this allegation only concerns the first element of a prima facie tort, that Hallmark intentionally committed a lawful act, and is completely absent of any allegation of an intent to injure.

With respect to the third element, "injury to the plaintiff," Plaintiffs have not suffered any injuries that are actionable under the law, as detailed above. Rather, Plaintiffs alleged that "Syed and Branch suffered garden variety emotional damages," *Id.* at ¶ 143, and have since conceded that their emotional damages are not medically diagnosable or significant. *See* Pls. Opp. at p. 11. All that remains are their alleged damages for some annoyance and discomfort suffered by virtue of their interactions with a "rude" employee. Such damages are not actionable under the law and do not qualify as an injury sufficient to satisfy the third element of a prima facie tort.

With respect to the fourth element, "insufficient justification for defendant's act," Plaintiffs explicitly acknowledge in their Amended Complaint that there was both a justification for separating them inside the aircraft (because of a lack of available oxygen masks), and for their removal from the plane (because they made the flight attendants and other passengers uncomfortable). *See* Ex. A at ¶¶ 60-61, 88-90. "A valid business interest will generally provide sufficient justification to defeat a claim for prima facie tort." *LPP Mortg.*, 224 S.W.3d at 55. Plaintiffs have acknowledged that they "understood" Hallmark's interest in separating them, and that Hallmark's reasoning was "rational." *See* Ex. A at ¶ 61.

Because Plaintiffs have failed to sufficiently plead three of the four necessary elements for

prima facie tort, Count IV should be dismissed.

**4.    Plaintiffs have not alleged sufficiently outrageous and malicious conduct on the part of Hallmark, and thus their punitive damages claim must be stricken.**

Plaintiffs have simply not adequately pled that Hallmark acted maliciously, willfully, or with complete indifference or conscious disregard for their safety, as is required to support a claim for punitive damages. *See Rock Port Mkt., Inc., v. Affiliated Foods Midwest Coop., Inc.*, 532 S.W.3d 180, 187 (Mo. Ct. App. 2017). Plaintiffs now contend in their opposition that they were "viciously removed" from the plane "for no cause whatsoever" and that "the actions of Hallmark's employee towards [Plaintiffs] were wholly unwarranted." Pls. Opp. at p. 14-15. However, this is directly contradicted by Plaintiffs' admissions in their Amended Complaint that they were provided an explanation for their removal, which they "understood", and that Hallmark's reasoning was "rational." *See* Ex. A at ¶¶ 60-61, 88-90. Consequently, the alleged conduct is objectively not malicious, and does not rise to the level of "complete indifference or conscious disregard for their safety." Although Plaintiffs may have been dissatisfied with Hallmark's customer service and displeased with having to interact with a rude employee, those allegations do not support a request for punitive damages. Even Plaintiffs' colorful descriptions in their Opposition of the alleged conduct does not rise to the level of punitive damages as a matter of law. As such, this Court should strike Plaintiffs' request for punitive damages.

### III.    CONCLUSION

For the foregoing reasons, this Court should dismiss all of Plaintiffs' claims against Hallmark, including their request for punitive damages, because those claims and the request for punitive damages are preempted by the ADA. In the alternative: Counts II through IV should be dismissed because they fail to state claims upon which relief can be granted; and both Count I and Plaintiffs' request for punitive damages should be stricken because they are insufficiently pled and

immaterial.

WHEREFORE, Defendant HALLMARK AVIATION SERVICES, L.P. prays that this Honorable Court enter an order dismissing Counts I through V of Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), striking Plaintiffs' punitive damages allegations pursuant to Fed. R. Civ. P. 12(f)(2), and for such further relief as this Court deems necessary and proper.

Respectfully Submitted,

HEPLERBROOM LLC

By: ___/s/Michael Reda_____
MICHAEL REDA                    # 33591MO
mreda@heplerbroom.com
211 North Broadway, Suite 2700
St. Louis, MO  63102
314/241-6160 / 314/241-6116 – Facsimile
Attorney for Defendant Hallmark Aviation
Services, L.P.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed on this 25th day of APRIL, 2020, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Bevis Schock
7777 Bonhomme Ave.
St. Louis, MO 63105
wbschock@schocklaw.com
        **Attorneys for Plaintiffs**

David Berwin
211 N. Broadway, 2500
St. Louis, MO 63102
dberwin@evans-dixon.com
        **Attorneys for Frontier Airlines**

Tara Shelke
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603
T: 312-422-5713

tshelke@amm-law.com
      Attorney for Frontier Airlines, Inc.

Brian Maye
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603
T: 312-422-5713
bmaye@amm-law.com

      I hereby certify that the foregoing document has been electronically mailed to the following on this 25th day of APRIL, 2020:

W. Bevis Schock
7777 Bonhomme Ave.
St. Louis, MO 63105
wbschock@schocklaw.com
      Attorneys for Plaintiffs

Thatcher Stone
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
T: 855-275-7378 / F: 646-873-7529
thatcher@stoneandwoodrowlaw.com
      Attorney for Plaintiff

William Woodrow
Stone & Woodrow LLP
250 West Main Street, Suite 201
Charlottesville, VA 22902
T: 855-275-7378/ F: 646-873-7529
will@stoneandwoodrowlaw.com
      Attorney for Plaintiff

David Berwin
211 N Broadway- Suite 2500
St. Louis, MO 63102
T: (314) 552-4046 / F:314-884-4446
dberwin@evans-dixon.com
      Attorney for Frontier Airlines, Inc.

Tara Shelke
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603

T: 312-422-5713
tshelke@amm-law.com
      Attorney for Frontier Airlines, Inc.

Brian Maye
Adler Murphy McQuillen
20 South Clark Street, Suite 2500
Chicago, IL 60603
T: 312-422-5713
 bmaye@amm-law.com
      Attorney for Frontier Airlines, Inc.

*/s/ Michael Reda*